**SMA LIFE ASSURANCE COMPANY,**
**Plaintiff, Appellant,**

v.

**Antonio SANCHEZ–PICA,**
**Defendant, Appellee.**

**No. 91–1981.**

United States Court of Appeals,
First Circuit.

Heard March 5, 1992.

Decided April 6, 1992.

Frank Gotay–Barquet with whom Feldstein, Gelpi & Gotay, Old San Juan, P.R., and Ralph Diller, Worcester, Mass., were on brief, for plaintiff, appellant.

Before BREYER, Chief Judge, FEINBERG,* Senior Circuit Judge, and SELYA, Circuit Judge.

FEINBERG, Senior Circuit Judge.

This appeal raises the issue of whether a federal district court abused its discretion in refusing to enjoin a local administrative agency proceeding so as to preclude relitigation of a matter previously determined by a default judgment in the district court. Plaintiff SMA Life Assurance Company (SMA) appeals from two orders of the United States District Court for the District of Puerto Rico, Carmen Consuelo Cerezo, J. The first order denied SMA's motion to

* Of the Second Circuit, sitting by designation.

protect or effectuate an earlier default judgment that rescinded an insurance policy issued by SMA to defendant Antonio Sanchez Pica (Sanchez), and the second order denied SMA's motion for reconsideration of the first order. Sanchez offered no defense in response to SMA's motion and was apparently unrepresented. In this court, SMA contends that the district court erred in refusing to issue an injunction effectuating its earlier judgment and asks us to vacate and remand with specific instructions to enjoin proceedings before the Commissioner of Insurance of Puerto Rico (the Commissioner) and to enjoin appellee Sanchez from relitigating the matter adjudicated by the district court. Sanchez did not file a brief on appeal or participate in the oral argument.

## I. *Background*

The case has an unusual procedural background. In July 1990, SMA sued Sanchez in the district court, seeking rescission of Sanchez's disability income insurance policy on the ground that he had not disclosed his full medical history in his application. As already indicated, Sanchez did not respond to the complaint. On November 26, 1990, the district court granted a default judgment in favor of SMA and against Sanchez, rescinding the insurance policy, ordering SMA to return to Sanchez all premiums paid and interest on the premiums, and releasing SMA from any further liability under the policy.

Unknown to the district court, however, even though Sanchez did not defend himself in the federal court, he was actively pursuing an administrative remedy against SMA. While SMA's federal cause of action was pending, SMA received a notice and order from the Commissioner dated September 28, 1990, enclosing a copy of an administrative complaint filed by Sanchez with the Commissioner, complaining of SMA's attempts to rescind the policy and seeking to enjoin such action by SMA. On November 5, 1990, SMA filed a response to the administrative complaint with the Commissioner, asking that the complaint be dismissed on the grounds that the Commissioner lacked jurisdiction and that an action

adjudicating the same issues was already pending in federal district court. After obtaining a default judgment in the district court a few weeks later, SMA filed a supplementary response to the administrative complaint and renewed its request for dismissal, this time on the ground of res judicata as a result of the district court's judgment in SMA's favor.

In February 1991, the Commissioner held an administrative hearing at which evidence was presented. In March 1991, the Commissioner, through the Chief of the Complaints Division (Deputy Commissioner), issued a decision denying SMA's request to dismiss Sanchez's administrative complaint, concluding that the Commissioner did have jurisdiction and finding the doctrine of res judicata inapplicable. The decision ordered SMA to reinstate Sanchez's policy upon receipt from him of the premiums (which had already been refunded by SMA pursuant to the district court judgment). SMA did not seek available administrative or judicial review of this decision.

In April 1991, SMA moved in the district court for an order to protect or effectuate its earlier judgment. The relief sought by SMA included, among other things, an order enjoining the Commissioner from enforcing the order directing policy reinstatement. In an opinion dated May 24, 1991, Judge Cerezo denied the motion. 764 F.Supp. 7. Thereafter, SMA moved the district court to reconsider its earlier judgment. In an opinion dated August 9, 1991, the judge denied this motion as well. 771 F.Supp. 15. This appeal followed.

## II. *Discussion*

### A. Res judicata

■ Appellant SMA devotes a substantial portion of its brief to the argument that the federal court's original judgment constituted a final judgment with res judicata effect even though it was a default judgment. That proposition is correct. *See, e.g., Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929) and *Hazen Research, Inc. v. Omega Min-*

*erals, Inc.,* 497 F.2d 151, 154 (5th Cir.1974), cited by appellant. *See also Rhode Island Hosp. Trust Nat'l Bank v. Ohio Casualty Ins. Co.,* 789 F.2d 74, 81 n. 10 (1st Cir. 1986). SMA argues that the Commissioner therefore erred in finding that res judicata did not apply and that the district court should not have deferred to the Commissioner's judgment.

The flaw in this argument is that the district court did not affirm the Commissioner's conclusion regarding res judicata as an appellate court might affirm a ruling of a lower court. What the district court did was to refuse to enjoin the agency proceeding, in spite of the fact that the agency's decision was—according to the district court—"plainly inconsistent with our prior judgment." The question before us is therefore not whether the local administrative agency was correct in its determination that res judicata principles did not apply. What we must decide is whether Judge Cerezo had the power to refrain from enjoining the local administrative proceeding and, if she did, whether she committed legal error in refusing to issue an injunction.

**B. Enjoining state proceedings**

SMA asserts that "[t]he fundamental question here is whether a federal court has power to stay a proceeding in a state agency because the claim in controversy has previously been adjudicated in the federal court." Although we do not share SMA's position that this is the fundamental question here, we agree that federal courts do have the power to protect their judgments. *See Fauci v. Hannon,* 275 F.2d 234, 238 (1st Cir.), *cert. denied,* 363 U.S. 811, 80 S.Ct. 1247, 4 L.Ed.2d 1153 (1960). While the Anti–Injunction Act, 28 U.S.C. § 2283, normally precludes a federal court from enjoining state court proceedings, the Act provides an exception for those cases in which an injunction is necessary to effectuate a judgment of the federal court and prevent the relitigation of issues that the federal court has already decided. *Id.* Appellant justifiably cites *Amalgamated Sugar Co. v. NL Indus. Inc.,* 825 F.2d 634 (2d Cir.), *cert. denied,* 484 U.S. 992, 108 S.Ct.

511, 98 L.Ed.2d 511 (1987), as an example of this exception.

In rendering her decision, Judge Cerezo was aware of this exception to the Anti–Injunction Act. Indeed, the judge believed that the Anti–Injunction Act did not apply to this case, since an administrative proceeding and not a state *court* proceeding was at issue. While the Supreme Court has left the issue open, see *Gibson v. Berryhill,* 411 U.S. 564, 573 n. 12, 93 S.Ct. 1689, 1695 n. 12, 36 L.Ed.2d 488 (1973), the appellate courts seem to agree that the Act applies only to state courts. *See, e.g., Kerr–McGee Chem. Corp. v. City of West Chicago,* 914 F.2d 820, 824 (7th Cir.1990); *American Motors Sales Corp. v. Runke,* 708 F.2d 202, 204 (6th Cir.1983); *Engelman v. Cahn,* 425 F.2d 954, 958 (2d Cir. 1969), *cert. denied,* 397 U.S. 1009, 90 S.Ct. 1238, 25 L.Ed.2d 422 (1970). It is clear, therefore, that Judge Cerezo did not feel constrained by the Anti–Injunction Act from effectuating her earlier ruling: she knew that she had the power to grant an injunction. Nevertheless, she chose not to exercise that power, asserting correctly that "[t]he fact that an injunction may issue ... does not necessarily mean that it must issue automatically," citing *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 151, 108 S.Ct. 1684, 1692, 100 L.Ed.2d 127 (1988). In order to be successful here, SMA must persuade us that the judge's refusal to enjoin the local administrative proceeding was an abuse of discretion. *See Associated Builders and Contractors of Massachusetts/Rhode Island, Inc. v. Massachusetts Water Resources Auth.,* 935 F.2d 345, 350 (1st Cir.1991) (en banc).

**C. Reasons for Denying the Injunction**

In her first decision, Judge Cerezo cited the principles of equity, comity, and federalism as the primary reason for her decision to deny SMA's motion. These are familiar and established principles that have animated the Supreme Court's decisions in *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), and other cases that have subsequently extended the *Younger* abstention

doctrine beyond state criminal proceedings. *See, e.g., Juidice v. Vail,* 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975). When a federal court enjoins state proceedings, at whatever level, it disrupts the delicate balance of power between the state and federal systems, and it should have a substantial justification for doing so.

In this case, the dispute is over an insurance contract. The dispute came to federal court because of the diversity of citizenship of the parties. We have recognized in insurance coverage actions, that a district court, asked to stay its hand, may regard as significant the pendency of parallel state proceedings and the absence of "federal issues." *Liberty Mut. Ins. Co. v. Foremost–McKesson, Inc.,* 751 F.2d 475, 476–77 (1st Cir.1985). It was therefore not unreasonable for the district court to trust the state system to handle the matter at hand.

The district court cited an additional factor informing its decision: SMA's failure to meet the standard for granting preliminary injunctions, which requires a showing of irreparable harm and the inadequacy of alternative remedies. *See Wulp v. Corcoran,* 454 F.2d 826, 831 n. 5 (1st Cir.1972). SMA responds that it need not meet this standard to empower the court to enjoin the proceedings at issue. Whether or not a federal court *must* apply this standard, however, the Supreme Court has explicitly approved of its application under similar circumstances. In *Younger,* for example, in holding that federal courts may not enjoin pending state court criminal proceedings, Justice Black specifically referred to "the basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43–44, 91 S.Ct. at 750. It was therefore not inappropriate for the district court to base its refusal of an injunction in part on its finding that "the Commonwealth [of Puerto Rico] courts are well qualified to protect SMA from the effect of the administrative decision by properly applying the doctrines of res judicata and collateral estoppel when judicially reviewing the same."

In her second opinion, which denied SMA's motion for reconsideration, Judge Cerezo relied, in addition, on the considerable activity that had already taken place at the agency prior to SMA's request for a federal court injunction. When SMA received from the Commissioner the September 28, 1990 notice of Sanchez's complaint against SMA, it did not promptly move in the district court for injunctive relief. Nor did SMA even inform Judge Cerezo of the pending administrative proceeding before it applied for, and obtained, a default judgment on November 26, 1990. Instead, SMA argued res judicata to the Commissioner and waited for the Commissioner to rule on this question before moving for an injunction in the federal court in April 1991.

■ Under the Full Faith and Credit Act, 28 U.S.C. § 1738, as construed by *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 524, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986), had the decision on res judicata been issued by a state court rather than by a state agency, SMA would have been barred from obtaining relief from the federal court. Although the Full Faith and Credit Act does not require deference to an agency's res judicata determination that precedes state court review, the Supreme Court has expressed approval for such deference where state administrative proceedings were of an adjudicative nature. *See University of Tennessee v. Elliott,* 478 U.S. 788, 797, 798–99, 106 S.Ct. 3220, 3225, 3226, 92 L.Ed.2d 635 (1986); *United States v. Utah Constr. Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.") *See also, Pagan–Hernandez v. University of Puerto Rico,* 107 D.P.R. 795, 804 (1978). We certainly cannot say that when Judge Cerezo denied the injunction, she erred in

taking into account the administrative proceedings that had already taken place and SMA's six-month delay in seeking relief in the federal court after learning of Sanchez's complaint to the Commissioner.

SMA argues that if it had utilized its administrative remedies and then sought judicial review in the Puerto Rican court, it would have thereby lost its right to seek the intervention of the district court. It is true that in *Parsons,* the Supreme Court made clear that:

> Even if the state court mistakenly rejected respondents' claim of res judicata, this does not justify the highly intrusive remedy of a federal-court injunction against the enforcement of the state-court judgment. Rather, the Full Faith and Credit Act requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive effect it would have had in another court of the same State. Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from this Court.

474 U.S. at 525, 106 S.Ct. at 772–73. We agree that *Parsons* created a problem for SMA. One solution to that problem might have been for SMA to promptly request an injunction from the federal court once SMA received the Commissioner's notice. Whatever Judge Cerezo might have done under those circumstances, that is not the course SMA followed.

SMA also complains that now it is no longer possible for it to seek state court review of the Commissioner's determination because the time to do so has expired. However, as the district court noted in its second opinion, "it was plaintiff [SMA] who, by choice, created the situation allegedly constituting irreparable injury and inadequate remedy at law" by failing to appeal the agency's judgment in a timely fashion and belatedly moving instead in the federal court to grant an injunction. We agree with the district court that SMA's inability to utilize state court procedures, which was caused by its own failure to act, is not a persuasive ground for granting SMA injunctive relief here.

We have considered all of SMA's arguments and find them to be without merit. We hold that on this record the district court did not act improperly in denying injunctive relief. We therefore affirm.