**Berta BAEZ CRUZ, et al., Plaintiffs,**

v.

**MUNICIPALITY OF COMERIO, et al., Defendants.**

**No. 95–1031(SEC).**

United States District Court, D. Puerto Rico.

March 26, 1997.

Adalina de Jesús–Morales, Rio Piedras, PR, for Plaintiffs.

Miguel A. Pagan–Rivera, Hato Rey, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendants' Motion for Summary Judgment as well as plaintiffs' opposition (**Docket # 63, 66**). After careful evaluation of the parties' arguments and applicable law, defendants' Motion for Summary Judgment is **GRANTED.**

### Summary Judgment Standard

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir. 1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992). *See also, Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

### FACTS

Plaintiffs are employees of the Municipality of Comerío. They allege that the Municipal Government of Comerío terminated their employment due solely to their political association with the Popular Democratic Party ("PDP"). They invoke federal jurisdiction pursuant to 42 U.S.C. § 1983 and 1988 and the First, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs also invoke the supplemental jurisdiction of the Court to hear and decide claims arising under Article II §§ 1, 4, 6, 7 and 8 of the Constitution of the Commonwealth of Puerto Rico and Law 100, 29 L.P.R.A. § 146 as amended. Plaintiffs also invoke supplemental jurisdiction to adjudicate state law claims pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141 and 5142.

Defendants claim that the Municipal Government of Comerío dismissed the plaintiffs in the present case exclusively because they participated on an illegal strike, sponsored by the Bona Fide Municipal Employees Union. Defendants also allege that the Municipality afforded plaintiffs pre-termination hearings before their dismissal.

This present case is not the first time that the parties have engaged in a litigious confrontation. Their strained relationships arises from an ongoing dispute between the Municipality and its employees. As noted by plaintiffs in their complaint, on January 12, 1993, defendant Luis Rivera Rivera, a member of the New Progressive Party ("NPP") swore in as mayor. Both parties agree that tensions ensued regarding the employees' perceived mistreatment by the new administration. Despite repeated attempts at negotiation, labor tensions continued. On July 1993, plaintiffs declared a one-day work stoppage. allegedly to "protest the abuses against them by the Rivera municipal administration." (Plaintiffs' Complaint, ¶ 49). On that occasion, they were admonished and the Municipality docked their pay for the day they were on strike. The employees appealed to J.A.S.A.P.'s administrative forum and the forum upheld the Municipality's action. (Report of Hearing Examiner of J.A.S.A.P. "Puerto Rico Appeals Board of the Personnel Administration System", Findings of Fact, ¶ 5) (hereinafter "J.A.S.A.P. Report")

Plaintiffs continued to seek negotiations with Mayor Rivera, allegedly to discuss their grievances and concerns about the recent dismissal of temporary employees and better working conditions. (J.A.S.A.P. Report, ¶ 3) When they failed to obtain a meeting with the Mayor, plaintiffs decided to conduct another work stoppage, from November 12, 1993 until November 16, 1993. The strikers convened in front of City Hall on November 12, 1993 at 11:00 a.m., with music and placards, directed by the Union Bonafide, demanding that the Mayor meet with Them. (J.A.S.A.P. Report, ¶ 11)

Due to the November 12, 1994 strike, the Mayor activated the Civil Defense force of the Municipality, in order to provide essential services to the community. *Id.,* ¶ 14 These services included water service, maintenance and cleaning of the sewage tank, disposal of solid waste and garbage collection. *Id.* ¶ 15 There were no employees available to attend incoming calls to the Municipality. *Id.* ¶ 16(e) There were some physical and verbal confrontations between the Civil Defense force and the strikers, who perceived the Civil Defense force as "strikebreakers". *Id.,* ¶ 17

During the strike, Mr. Domingo Marcano, the Municipality's auditor, conducted an investigation from the different departments in the Municipality and examined the assistance records. He attended the different departments and met with Personnel Director Edgardo Hernandez. In his visit he corroborated the assistance. *Id.,* ¶ 10 At the J.A.S.A.P. administrative hearing, Mr. Marmano identified all the plaintiffs which had participated in the strike and which had been dismissed. *Id.,* ¶ 12. Mr. Marcano testified that the Municipality never took into account the political affiliation of the employees in their decision to dismiss them.

After the strike, the Municipality informed forty eight employees of their dismissal, although later twenty four of those employees were reinstated. Mr. Marcano testified that the Municipality dismissed the employees based on the recommendation of the agency examiner who conducted the investigation shortly after the strike. The examiner recommended that the Municipality could dismiss those employees which the government could identify; he further recommended that the Municipality could dock a day's pay to those employees which the government could not identify as strikers but who had nevertheless failed to attend work during the strike. ¶¶ 21, 22

Mrs. Neyda Febus, one of the striking employees, testified at the hearing. She noted that everyone knew that the striking employees were affiliated with the PDP, and that they were subject to constant harassment by the Municipal Administration, which she alleges was dominated by members of the New Progressive Party.

After ascertaining the facts noted above, the Hearing Examiner of J.A.S.A.P. determined that the appellants had participated in the strike promoted by Unión Bonafide. (Defendant's Motion for Summary Judgment, Docket # 4; Hearing Examiner's Legal Conclusions, p. 13–14) She also found that their dismissal was proper. (J.A.S.A.P. Report, Appendix 62) The Examiner noted that the striking employees had already engaged in a previous illegal strike and had been admon-

ished. (J.A.S.A.P. Report, Appendix 62) The Examiner concluded that government employees are not authorized to engage in collective negotiation and therefore cannot conduct a work stoppage or strike. *Id.* App. 62–63; *La Junta de Relaciones del Trabajo v. La Junta de Retiro para Maestros,* 90 J.T.S. 135; *Autoridad de Acueductos y Alcantarillados v. Unión de Empleados AAA,* 105 D.P.R. 437 (1986). Upon the appellants' claim that the Municipality dismissed the employees due to political discrimination, the Examiner acknowledged that all of the 48 employees to which the Municipality initially informed of their dismissal belonged to the Popular Democratic Party; however, the Examiner concluded that twenty four of them were reinstated after the administrative hearings on their dismissal. (J.A.S.A.P. Report, ¶ 21). Accordingly, the Examiner did not find that political discrimination played a role in the Municipal Government's dismissal of the employees.

The Superior Court of Aibonito confirmed the resolution of the Puerto Rico Personnel Administration Systems Appeal Board ("J.A.S.A.P."). J.A.S.A.P. had decided that the municipal employees of Comerío had participated in an illegal strike. Accordingly, the Mayor Honorable Luis Rivera Rivera and the Municipal Government of Comerío had correctly and properly dismissed the employees. Due to its relevance to the disposition of this case, we quote the Court's opinion in its entirety:

> The Petition for Revision submitted is DISMISSED by the Court. An examination of the Petition for Revision and the Brief Requesting Revision, as well as the Examiner's report convinces us that **the determinations of facts made by the Administrative Forum are upheld by substantial evidence and the determination to uphold the dismissal of the employees is pursuant to law.** There is **no basis for this Court to vary neither the determinations of facts nor the legal conclusions of the Administrative Forum.**
>
> According to the record, **the appellant employees went on strike; activity which this same Court on a previous occasion had already catalogued ilegal**

[sic]. The employees had already been warned by the first strike and notwithstanding repeated this act. The determinations of facts by the Examiner are clear regarding the form and manner in which the services rendered by the Municipality were affected. Based on this **the action of dismissing the employees was within the legal framework permissible to the Municipality.**

> Finally, even accepting as true the arguments by the appellants, for the purpose of arguing only, that their action was caused by a violation by the Municipality of some verbal agreements, **this does not justifies [sic] nor makes the strike legal.** In a civilized and democratic society in which we live, legitimate claims cannot be made that some citizens may have by using illegal means [sic]. Based on the aforementioned, this Court DISMISSES [sic] the Petition for Revision submitted by the Appellants–Recurrents. (emphasis added)
>
> (Docket # 18, Certified Translation of Judgment)

Upon Appeal to the Puerto Rico Court of Appeals and then to the Supreme Court of Puerto Rico, the Court affirmed the decision of J.A.S.A.P. (**Docket # 38, 63**) Upon plaintiffs' reconsideration to the Supreme Court, the Court denied such motion on February 21, 1997 (**Docket # 63, Exhibit 2**).

**Res Judicata/Issue Preclusion**

Defendants claim that the issues in the present case have already been adjudicated by J.A.S.A.P., and affirmed by the Superior Court of Aibonito. Accordingly, they argue that such issues should be subject to the doctrine of collateral estoppel and issue preclusion. This Court agrees.

 Under the rule of res judicata—sometimes called "claim preclusion"—a valid and final personal judgment is conclusive of a claim. If the judgment is for the plaintiff, the claim is extinguished and merged in the judgment; if the judgment is for the defendant, plaintiff is barred from reasserting the claim. *Restatement of Judgments* 2d § 17. Claim preclusion applies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as

to any other admissible matter which might have been offered for that purpose." *Cromwell v. of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *see also Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■■■ Under the related doctrine of collateral estoppel—also termed "issue preclusion"—when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, even on a different claim. *Restatement of Judgments* 2d § 27; 18 Wright, Miller & Cooper, *Jurisdiction* §§ 4416–4419. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Supreme Court has expressly held that the doctrine of collateral estoppel applies in § 1983 actions. *Allen v. McCurry*, 449 U.S. at 104–105, 101 S.Ct. at 420. Notwithstanding the federal court's interpretation of the res judicata and collateral estoppel doctrines, the Supreme Court has emphasized that federal courts cannot employ their own rules of res judicata in determining the effect of state judgments. Rather, federal courts must accept the rules chosen by the state from which the judgment is taken. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1897–1898, 72 L.Ed.2d 262 (1982).

With this in mind, we must examine the rules of res judicata as interpreted by the Supreme Court of the Commonwealth of Puerto Rico. The doctrine of res judicata is codified in 31 L.P.R.A. § 3343. This section reads, in pertinent part:

In order that the presumption of the res judicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such.

The Supreme Court of Puerto Rico has frequently reiterated these requirements in their application of the res judicata doctrine. *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, 110 D.P.R. 753, 763 (1981); *Negrón v. C.I.T. Financial Services Corp.*, 111 D.P.R. 657, 661 (1981).

■■■ Upon review of this doctrine, this Court finds that the doctrine of issue preclusion is applicable to the present case. The facts of the present case have already been adjudicated by an administrative forum in the Commonwealth of Puerto Rico. There exists the most perfect identity between the parties in the administrative adjudication and the present case. The same twenty four employees who participated and litigated their claims in the administrative forum are also the parties in the above captioned case.[1] The parties had a full and adequate opportunity to litigate their claims of discrimination and unjust dismissal in the J.A.S.A.P. The Superior Court of Aibonito affirmed the decision and upon appeal, the Supreme Court of Puerto Rico affirmed the lower court's decision. Accordingly, this Court must abide by the factual findings of the state administrative agency.

## Preclusive Effect of Factual Findings in Administrative Proceedings

The Supreme Court has expressly held that when a state agency "acting in a judicial capacity resolves disputed issues of fact

1. Plaintiffs claim in their opposition to summary judgment that the claims and the parties are different in the present action and the administrative forum. (Plaintiffs' Opposition of March 18, 1997, p. 13–14): "In the earlier administrative proceeding, the parties were limited to the plaintiffs herein and the Municipality of Comerío. In the instant case, three of the four named **defendants** are individuals whose actions under color of law are alleged to have violated the constitution, not the Personnel Law of Puerto Rico. These individuals codefendants were never

before J.A.S.A.P. nor could they be." *Id.* at 14. However, the fact is that plaintiffs had a full and fair opportunity to litigate their claims of political discrimination. Several courts have conclusively established that the sole reason for plaintiffs' dismissal was their participation in the illegal strike. The Courts considered and rejected plaintiffs' allegation of political harassment and persecution. We will defer to such findings. Accordingly, plaintiffs' argument against the granting of summary judgment must fail.

properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State courts." *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635( 1986). Such is the situation in the present case. The Court has espoused this judicial philosophy since 1966, when it held in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642, that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."

According to the Court's reasoning, giving preclusive effect to administrative fact finding serves the value underlying general principles of collateral estoppel: enforcing repose. This value, which encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources is equally implicated whether fact finding is done by a federal or state agency. *Elliott,* 478 U.S. at 798, 106 S.Ct. at 3226. (citing *Allen v. McCurry,* 449 U.S. at 94, 101 S.Ct. at 414–415)

Moreover, noted the Supreme Court, "[h]aving federal courts give preclusive effect to the fact finding of state administrative tribunals also serves the value of federalism ... Perhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force, and this purpose is served by giving preclusive effect to state administrative fact finding, rather than leaving the courts of a second forum, state or federal, free to reach conflicting results." *Elliott,* 478 U.S. at 798, 106 S.Ct. at 3226.[2] The First Circuit has expressly adopted the Supreme Court's holdings in *Utah Construction* and *Elliott. SMA Life Assurance Co. v.*

*Sanchez–Pica,* 960 F.2d 274, 277 (1st Cir. 1992).

We note that the Supreme Court of the United States has held that § 1983 claims are not exempt from the applicable rules of res judicata and claim preclusion.*See Migra v. Warren City School District,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

Based on the collateral estoppel doctrine, this Court is bound to accept those issues which have already been litigated by the parties and adjudicated by the J.A.S.A.P. Hearing Examiner. Accordingly, we proceed with our analysis of defendant's First and Fourteenth Amendment claims in light of the previous adjudication.

It is well-settled law that the First Amendment protects "nonpolicy making public employees from discrimination based on their political beliefs or affiliation." *LaRou v. Ridlon,* 98 F.3d 659, 661 (1st Cir.1996) (citing *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574); *see also Romero– Barcelo v. Hernandez Agosto,* 75 F.3d 23, 24 (1st Cir.1996).

The First Circuit has adopted a burden-shifting analysis to determine the validity of political discrimination claims. It recently expounded on this framework in *LaRou v. Ridlon,* 98 F.3d at 661. In that case, the Court noted:

> The plaintiff-employee in a political retaliation case "must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that [his or her] constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind the adverse employment action taken by the defendant official." *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993). The burden then shifts to the defendant official to articulate a nondiscriminatory basis for the adverse employment action, and prove

2. One respected authority on administrative law has cogently crystallized the spirit of the res judicata doctrine: "The law of res judicata, much more than most other segments of law, has rhyme, reason and rhythm—something in common with good poetry. Its inner logic is rather satisfying. It consists entirely of an elaboration of the obvious principle that a controversy should be resolved once, not more than once. The principle is as much needed for administrative decisions as for judicial decisions. To the extent that administrative adjudications resemble courts' decisions—a very great extent—the law worked out for courts does and should apply to agencies." 4 K. Davis, *Administrative Law Treatise* § 21.9, p. 78 (2d ed.1983).

by a preponderance of the evidence that the adverse action would have been taken regardless of any discriminatory political motivation. *Id. See also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). *Id.* at 661.

The Court in *LaRou* also cited the precedent established in *Correa–Martinez v. Belendez,* 903 F.2d 49 (1st Cir.1990). In *Correa–Martinez,* the First Circuit dismissed a political discrimination claim that an administrator had been constructively discharged from the judicial branch of the Commonwealth of Puerto Rico due to his prior association with a former judge who espoused political views contrary to those of the defendants. The Court explained:

> ... a politically charged atmosphere ... without more, provide[s] no basis for a reasonable inference that defendants' employment decisions about plaintiff were tainted by their disregard of plaintiff's first amendment rights. Absent a constitutionally protected aspect, a "close" relationship with a third party is insufficient.. notwithstanding that consideration of the third party's political beliefs may have entered into the decision making calculus. *LaRou,* .98 F.3d at 661–662. (citing *Correa Martinez* at 58).

Finally, the First Circuit stressed in *LaRou* that "the plaintiff is required to show that 'a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics." *Id.* at 662. *See also Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992) (plaintiff-employee must show causal connection between his political affiliation and the adverse treatment).

Based on the record developed by the Hearing Examiner, we find that plaintiffs failed to establish that defendants violated their First Amendment rights. The administrative forum found, and the state court upheld the findings, that the sole reason for plaintiffs' dismissal was their participation in an illegal strike. Accordingly, plaintiffs' § 1983 claim, pursuant to a violation of the First Amendment is hereby **dismissed.** Plaintiffs have also failed to establish that defendants' dismissal of employees constituted a constitutional deprivation of their property interest without due process, pursuant to the Fourteenth Amendment. J.A.S.A.P.'s Hearing Examiner and the state court upheld the finding that the Municipality had afforded an adequate hearing to those employees who were dismissed. (J.A.S.A.P. Report, App.63) Accordingly, plaintiffs' Fourteenth Amendment claim is hereby dismissed.[3]

█ We also decline to exercise jurisdiction over plaintiffs' remaining state claims against defendants. Plaintiffs filed these claims pursuant to Article II, §§ 1, 4, 6, 7 and 8 of the Constitution of the Commonwealth of Puerto Rico, Law 100, 29 L.P.R.A. § 146 as amended, and articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141 and 5142. This Court feels that these claims, if actionable, could properly be entertained in the local courts of Puerto Rico. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995).

---

**3.** We echo Judge Pieras' sentiments regarding the potential abuse of § 1983 claims: "It cannot be doubted that good laws and jurisprudence in the relatively nascent field of civil rights, particularly as applied to sex, race, national origin and age discrimination, are beneficial and important. However, the concept of civil rights violations as a cause of action, no matter how popular, cannot be applied to all situations. Judges must exercise their power to contain the use of legislatively created constitutional causes of action within reasonable boundaries. Otherwise, the pendulum will inexorably move too far toward permissiveness, turning otherwise useful legislation into a tool for abuse, and eventually forcing the legislature to undo the damage wrought by overly liberal application. Whenever judges allow unfettered use of excellent legislation to spoil that legislation and thereby force legislative intervention and constraint, we must fear that the original value of the law will be lost." *Muñoz v. Davila,* 954 F.Supp. 455 (D.Puerto Rico) (Pieras, J.).

Accordingly, defendants' Motion for Summary Judgment is **GRANTED.** (Docket # 63) and plaintiffs' complaint against defendants is **DISMISSED.** Judgment shall follow accordingly.

**SO ORDERED.**