# United States Court of Appeals

## For the First Circuit

No. 06-2676

NELSON ARISTUD-GONZÁLEZ,

Plaintiff, Appellee,

v.

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO (GDB);
WILLIAMLOCKWOOD-BENNET, as current President of the GDB,

Defendants, Appellants.

_____

HÉCTOR MÉNDEZ-VÁZQUEZ, as former President of the GDB;
GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO (GDB); WILLIAM
LOCKWOOD-BENNET, as current President of the GDB; RAQUEL ANDÚJAR,
as Director of the Department of Pre-intervention of the GDB;
EDGARDO RODRÍGUEZ-NIEVES, as Director of Human Resources of the
GDB; AWILDA ARCHES, as Director of Payroll; AIICO of PR;
INSURANCE COMPANY X,

Defendants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

_____

Before

Boudin, Chief Judge,

Howard, Circuit Judge,

and Saylor,[*] District Judge.

_____

[*]Of the District of Massachusetts, sitting by designation.

Mariela Rexach-Rexach with whom Ricardo Guzmán-López de Victoria and Schuster Aguiló LLP were on brief for defendants, appellants.

Fredeswin Pérez-Caballero with whom Jesús Hernández-Sánchez and Hernandez Sanchez Law Firm were on brief for appellee.

———————————

August 31, 2007

———————————

**BOUDIN**, **Chief Judge**.   Nelson Aristud-Gonzalez was an employee of the Government Development Bank for Puerto Rico ("the bank").  He began work in 1999 as a payroll assistant and became a payroll manager in 2000.  When that promotion was revoked because the bank had not followed merit procedures, he was made a special assistant to the bank president--a "trust" position subject to removal at will.  In September 2005, Aristud lost that position and was given no other.

In 2003, while working as special assistant, Aristud brought suit under 42 U.S.C. § 1983 (2000), charging that he had been deprived of his payroll manager position based on his political affiliation; lack of a prior hearing (allegedly in violation of his due process rights) was also alleged.[1]  The named defendants were the bank, an instrumentality of the Commonwealth of Puerto Rico, and its then-president Hector Mendez-Vazquez.

The district court rejected the first amendment claim, determining that there was no evidence of improper political motivation sufficient to justify a trial.  As to the lack of a pre-deprivation hearing, the court held that under Puerto Rico law Aristud had no property interest in his payroll manager job because the appointment had been improper, Kauffman v. P.R. Tel. Co., 841

---

[1]After Aristud was terminated in September 2005, he sought to amend his federal complaint to include allegations arising from that termination.  The court did not permit the amendment, which would have been Aristud's third.

-3-

F.2d 1169, 1173 (1st Cir. 1988), and none in his subsequent "trust" position as special assistant. 3 P.R. Laws Ann. § 1465(2) (2006); Galloza v. Foy, 389 F.3d 26, 34 (1st Cir. 2004).

Aristud had not sought relief implicating his original position at the bank--a career position as payroll assistant--but the district court's decision adverted to it as part of the chronology. The district court noted that Aristud had secured the payroll manager job after losing the assistant position and that he had lost the assistant position because it was classified as a job for union members and Aristud had declined to join the union.

Following the dismissal of his section 1983 claims, Aristud brought a new lawsuit in the Puerto Rico Superior Court. In it, he sought to require the bank to reinstate him to his original career position as payroll assistant. Again, Aristud alleged political discrimination in violation of the First Amendment.[2] The bank countered by moving in the original federal action for an injunction to bar Aristud from pursuing his new case; the new case, argued the bank, was an attempt to re-litigate matters foreclosed by the federal judgment.

The district court rejected the request. In a brief decision, the court said that it had power to protect its prior

---

[2] He also sought reinstatement to this position under Puerto Rico law--later reenacted in 3 P.R. Laws Ann. § 1465a(1)-- providing for reinstatement of career employees who are transferred to trust positions.

judgment; but it said "substantial justification" was needed to interfere with state proceedings and that--because res judicata and collateral estoppel defenses could be asserted in those state proceedings--there was no irreparable injury and an adequate alternative remedy existed. A motion for reconsideration was denied.

The bank now appeals to this court, arguing that the district court abused its discretion in declining to enjoin the new state court proceeding. Abuse of discretion is the usual standard applied in reviewing the grant or denial of a preliminary injunction, although issues of law (reviewed de novo) and issues of fact (reviewed for clear error) can also arise. Water Keeper Alliance v. United States Dep't of Def., 271 F.3d 21, 30 (1st Cir. 2001). The bank makes arguments that could be classified in each of these categories.

Much of the bank's brief is devoted to an attempt to show that the new state court suit is barred by findings made in the federal action;[3] the pertinent doctrine is collateral estoppel or issue preclusion. The bank also argues that the new suit is barred by the doctrine that forbids claim splitting--merger and bar or

---

[3]The bank asserts that two pertinent issues allegedly resolved in the first case will, based on the complaint and discovery materials in the second case, be at issue in the second: whether Aristud lost his first job as payroll assistant because it was a union job and he was not a member; and whether the bank had a policy of discriminating against members of Aristud's party.

claim preclusion. The latter is sometimes called res judicata but strictly speaking both doctrines are branches of res judicata, which is the umbrella term.

Whether either issue or claim preclusion applies to limit or bar Aristud's new suit would take some sorting out. Claim preclusion, especially in federal courts, has expanded in recent decades from its long-time use to prevent re-litigation of the same "cause of action" to the barring of claims that were not brought earlier but grew out of the same nucleus of operative facts and "should have been brought" in the earlier action. E.g., Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir. 1996).

Issue preclusion doctrine has been more stable, in the respects pertinent to this case, but normally does not bar a whole suit but rather only re-litigation of specific facts earlier resolved and necessary to the original judgment. Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). Issue preclusion--unlike the more rigid rules governing claim preclusion--is also subject to various conditions and exceptions laid out in the Restatement, treatises and case law.[4] For example, it is far from clear that a description of how Aristud came to lose

_____

[4]See Restatement (Second) of Judgments § 28 (1982); 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §§ 4416, 4422, 4426 (2002 & Supp. 2007); Hoult v. Hoult, 157 F.3d 29, 31 (1st Cir. 1998) (noting doctrine's various exceptions).

his first position was "necessary" to the judgment in the federal lawsuit.

Some overlap exists between Aristud's two lawsuits but we have no intention of pursuing the issue--and for the same reason as the district judge. True, a federal court can issue an injunction to protect its judgment; this is a conventional ground for equitable relief and an explicit exception to the Anti-Injunction Act, 28 U.S.C. § 2283, which otherwise limits the ability of federal courts to derail state litigation.

However, the "protect the judgment" category covers more than one type of case. For example, ancillary injunctive relief is common where a defendant has failed to comply with a prior injunction. E.g., Nat'l Law Ctr. on Homelessness & Poverty v. United States Veterans Admin., 765 F. Supp. 1, 6 (D.D.C. 1991). Injunctive relief incident to an interpleader action is also common--the whole purpose being to avoid inconsistent results in separate lawsuits. E.g., Gen. Ry. Signal Co. v. Corcoran, 921 F.2d 700, 707 (7th Cir. 1991).

By contrast, the need for an injunction barring a new lawsuit, where relief is sought solely on the ground that the claim has already been litigated in a prior action, takes more justification, De Cosme v. Sea Containers, Ltd., 874 F.2d 66, 68-69 (1st Cir. 1989), and injunctive relief based on issue preclusion would be even rarer. Yes, the judge in the prior case knows the

scope of his own litigation, but the judge in the new case has the advantage in assessing its scope. And res judicata in both its forms turns on the relationship between two lawsuits.

Accordingly, many judges would take the view that, absent unusual circumstances, res judicata is just another defense that ought to be asserted in the new lawsuit; and judges are even more likely to take this view where, as here, the res judicata question is itself subject to debate and might not yield an all or nothing answer. We ourselves have said that substantial justification should be provided for such intervention. SMA Life Assurance Co. v. Sanchez-Pica, 960 F.2d 274, 277 (1st Cir. 1992).

No doubt some cases call out for preemption: considerations might be the number and frequency of new suits, whether they are obviously barred by res judicata, the burden imposed by re-litigation in a far away or unfriendly venue, improper motivations for the new suit or suits and the extent to which the res judicata issue turns on judgments that are clearly better able to be made by the first judge. Courts have adverted to such concerns to inform their discretion.[5]

---

[5]Harrelson v. United States, 613 F.2d 114, 116 (5th Cir. 1980) (possible use to bar repetitive suits where litigants are harassing their opponents); In re Louisiana-Pacific Inner Seal Siding Litig., 234 F. Supp. 2d 1170, 1180 (D. Or. 2002) (risk that multiple state court suits would be instituted against defendant); Walter E. Heller & Co., Inc. v. Cox, 379 F. Supp. 299, 309-10 (S.D.N.Y. 1974) (litigant subjected to fifteen repetitive suits over nine years).

This case has nothing that leaps out as a reason for taking the res judicata issues away from the local court--let alone reasons so compelling that we would think that the district court had abused its discretion.  The bank criticizes the district judge for failing to spell out his calculations; but the considerations so plainly supported a decision to leave the matter to the local court that no one needed further explanation and the appeal, although not technically frivolous, is hopeless.

The district judge spoke both of a lack of irreparable injury and of an available remedy of urging res judicata defensively in the new lawsuit.  The  bank says that the defense against the new lawsuit will cost time and money and that this counts as irreparable injury; it does not address the adequate remedy issue but conceivably could argue that it would cost more to litigate in the new case.

Courts sometimes treat the cost of further litigation as an important equitable consideration, sometimes say it is not irreparable injury, and sometimes disregard irreparable injury as a requirement where someone seeks to re-litigate a previously decided issue.[6]  Possibly there is some pattern to this contrariety

---

[6]Compare Ballenger v. Mobil Oil Corp., 138 Fed. Appx. 615, 622 (5th Cir. 2005) ("No independent demonstration of irreparable harm or a lack of alternative remedies is necessary to win an injunction under the relitigation exception to the Anti-Injunction Act."), with In re SDDS, Inc., 97 F.3d 1030, 1041 (8th Cir. 1996) (the cost of relitigation constitutes irreparable harm), and with FDIC v. Bank of N.Y., 479 F. Supp. 2d 1, 19 (D.D.C. 2007) (cost of

of statements; not all litigation expenses are the same in magnitude or certainty or symmetry as between alternative forums.

In all events, the Puerto Rico courts are an alternative forum and any assumption that it would cost less to decide the res judicata issue in the district court is unsupported. If the res judicata issue can be easily resolved, the local court can do that. And, to the extent that res judicata has some application but does not end the local litigation, only one court need tackle the problem rather than two.

Affirmed.

---

repetitive litigation an equitable consideration), and with SMA Life Assurance, 960 F.2d at 277 (defendant had not demonstrated irreparable harm or an inadequate remedy).