**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Richard A. MOTTOLO, et al., Defendants,
Appellants. (Two Cases)**

Nos. 93–1729, 93–2078.

United States Court of Appeals,
First Circuit.

Heard April 7, 1994.

Decided July 18, 1994.

**262**

James H. Gambrill, with whom Engel, Gearreald & Gardner, P.A., Stratham, NH, was on brief, for appellants.

Andrea Nervi Ward, Atty., Dept. of Justice, Washington, DC, with whom Jeffrey R. Howard, Atty. Gen., Anne E. Renner, Asst. Atty. Gen., Concord, NH, Lois J. Schiffer, Acting Asst. Atty. Gen., Beth Tomasello, Atty., EPA, David C. Shilton and Elizabeth Yu, Attys., Dept. of Justice, Washington, DC, were on brief, for appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Defendants Richard A. Mottolo and Service Pumping & Drain Co., Inc. (collectively, "Mottolo") appeal from a district court judgment declaring them jointly and severally liable under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675, 9607 (1993), for all past and future response costs incurred by plaintiffs-appellees, the United States and the State of New Hampshire ("State"), in remediating hazardous waste contamination on property owned by Mottolo. Finding no error, we affirm.

## I

### BACKGROUND

Mottolo acquired a 65–acre parcel of farmland in Raymond, New Hampshire ("Property") in 1964. In 1975, Service Pumping & Drain Co., Inc. began operations at the Property. In 1979, the State discovered "hazardous [chemical] substances" on the Property, see id. § 9601(14); 40 C.F.R. pt. 261 (1993), and determined that the contaminants had been discharged directly onto the surface or deposited in leaching barrels buried beneath the surface. The State determined that the waste threatened a groundwater aquifer feeding nearby wells, and requested the United States Environmental Protection Agency ("EPA") to take removal and remediation measures. During the EPA cleanup, alleges Mottolo, EPA moved drums from the contaminated northern sector of the Property for temporary storage at a staging area on the southern boundary pending removal from the Property.

The United States and the State filed suit in federal district court to recover past and future cleanup costs, see 42 U.S.C. § 9607(a)(4)(A), naming as defendants, inter alia: Mottolo, as "owner" and "operator" of the Property and "transporter" of waste to the site; and K.J. Quinn and Company ("Quinn"), as an alleged "generator" of the waste who contracted with Mottolo for its on-site disposal. See id. § 9607(a)(1)–(4) (listing "potentially responsible parties," who are jointly, severally, and strictly liable for all CERCLA response costs); Juniper Dev. Group v. Kahn (In re Hemingway Trans., Inc.), 993 F.2d 915, 921 (1st Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). Mottolo and Quinn interposed several statutory and equitable defenses to CERCLA liability.

In August 1988, plaintiffs-appellees successfully moved for partial summary judgment as to Mottolo's and Quinn's joint and several liability for response costs. United States v. Mottolo, 695 F.Supp. 615, 631–32 (D.N.H.1988); see Fed.R.Civ.P. 56(c) ("A summary judgment . . . may be rendered on the issue of liability alone though there is a genuine issue as to the amount of damages."). In 1990, the parties stipulated to the amount of past response costs incurred by the appellees "not inconsistent with the national contingency plan" ($601,961), see 42 U.S.C. § 9607(a)(4)–(A), and the district court subsequently entered judgment declaring Mottolo liable for those response costs, as well as for any future cleanup costs appellees might incur at the Property. United States v. Mottolo, Nos. 83–547–D, 84–90–D (D.N.H. Dec. 17, 1992); see 42 U.S.C. § 9613(g)(2).

After the district court certified its declaratory judgment, pursuant to Fed.R.Civ.P. 54(b), Mottolo brought these appeals challenging its liability for past and future cleanup costs.

## II

### DISCUSSION

■ Mottolo asserts two challenges to the district court judgment declaring him "jointly and severally" liable to the State and the United States for all past and future response costs at the Property. First, Mottolo contends that a trialworthy issue remained with respect to his entitlement to a "third party" affirmative defense under CERCLA which permits an otherwise potentially responsible party to escape strict liability if he proves by a preponderance of the evidence that the contamination was "caused *solely* by ... an act or omission of [an unrelated] third party." 42 U.S.C. § 9607(b)(3) (emphasis added). Mottolo argues that even if he were to concede strict liability for the contamination in the *northern sector* of the Property, the "sole" cause of contamination in the pristine *southern boundary area* of the Property was EPA's gross negligence in removing leaching barrels of waste to the latter area for temporary storage. Second, Mottolo attempts to employ this same partitioning approach to establish that legal responsibility for environmental harm to the Property is likewise "divisible" since partitioning would permit a reasonable apportionment of costs between himself and EPA. *See O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990). We decline to address these claims because they were not preserved in the district court.

■ Section 9607(b)(3) and the *O'Neil* "divisibility" doctrine constitute affirmative defenses which would preclude CERCLA liability. *See United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Yet neither defense was raised in Mottolo's answers to appellees' complaints, *see* Fed.R.Civ.P. 8(c) (in its responsive pleading, "a party shall set forth ... any other matter constituting an avoidance or affirmative defense"), nor did Mottolo advance either contention in response to appellees' motions for partial summary judgment in 1988.[1]

■ By contrast, codefendant Quinn squarely raised the "third party" defense—albeit premised on unsupported allegations of a "negligent" EPA cleanup—both in its answer and responsive memoranda. Indeed, the district court specifically noted in its August 1988 summary judgment decision that this defense had been presented by Quinn *alone*, not by Mottolo. *See Mottolo*, 695 F.Supp. at 625 ("*Quinn* asserts that ... EPA's allegedly negligent supervision of cleanup operations....") (emphasis added); *id.* at 626, 626 n. 9 ("*Quinn* also asserts it exercised due care in its dealings....") (emphasis added). *But cf. id.* at 627–28 (addressing Mottolo's distinct *equitable* defenses, including estoppel, waiver, and release). At summary judgment on the issue of liability, unproffered affirmative defenses to liability normally are deemed abandoned. *See, e.g., United Mine Workers 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C.Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 3039, 125 L.Ed.2d 726 (1993); *Pantry Inc. v. Stop-n-Go Foods, Inc.*, 796 F.Supp. 1164, 1167 (S.D.Ind.1992).

■ Mottolo's failure to preserve these affirmative defenses was neither technical in nature nor inadvertent. Mottolo was not entitled to rely on codefendant Quinn's "third party" defense, because such a defense is *personal* to the defendant who raises it.[2] But even if the rule were otherwise, Mottolo could not claim the benefit of a codefendant's

---

1. In an August 1986 memorandum opposing partial summary judgment (Docket # 176), Mottolo raised two matters: (1) a claim that CERCLA could not be given retroactive effect to permit recovery of pre-enactment response costs; and (2) an estoppel claim based on an EPA representative's alleged statement that EPA would not seek reimbursement from Mottolo.

2. The district court expressly noted, moreover, that the codefendants would be treated as a group only where their "individual arguments ... apply to and benefit all ... defendants." *Mottolo*, 695 F.Supp. at 618 n. 1.

proffer that a third party (EPA) was the sole cause of the contamination, *without first establishing* that "(a) [*Mottolo* himself] exercised *due care* with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) [*Mottolo* himself] took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions." 42 U.S.C. § 9607(b)(3)(a)–(b) (emphasis added). At the very least, therefore, Mottolo would have been required to present developed argumentation and *competent evidence* that he exercised "due care" as an "owner," "operator," and "transporter," *see Pahlavi v. Palandjian,* 809 F.2d 938, 943 (1st Cir.1987); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), factual issues wholly distinct from codefendant Quinn's due care as a "generator." Even as late as December 1992, however, the district court re-examined *Quinn*'s third-party defense but observed that Mottolo had yet to "articulate[ ] [a 'due care' argument] *on his own behalf.*" *Mottolo,* Nos. 83–547–D, 84–90–D, slip op. at 10 n. 6 (emphasis added).[3]

Finally, and most importantly, there is no suggestion or indication that Mottolo was unable to assert these defenses in a timely manner in 1988, after Mottolo's pre-cleanup handling of the hazardous waste and EPA's cleanup activities had become matters of historical fact. Nor did Mottolo ever request an extension of time for discovery relating to these matters. *See* Fed.R.Civ.P. 56(f). Moreover, Quinn's synchronous pleadings and summary judgment memoranda put Mottolo on clear notice of these very affirmative defenses. To hold that a defendant in these circumstances may bide his time by withholding such liability-negating affirmative defenses until after summary judgment

has been entered against him in the district court, and then assert them years later only after an appeal has been taken, would make a mockery of the summary judgment process and do incalculable injustice to opposing parties who have played by the rules.

Accordingly, the district court judgment declaring Mottolo jointly and severally liable for appellees' CERCLA response costs must be affirmed.

***The judgment is affirmed; double costs to appellees.***

---

3. Even if these defenses had not been abandoned irretrievably in 1988, and could have been raised for the first time in response to the request for declaratory relief, Mottolo has not included any of his later responsive memoranda in the appellate record. These memoranda are the only means by which appellate review of the district court ruling—that Mottolo failed to "articulate" the "due care" contention critical to his defense—*might conceivably* have been rendered practicable. *See Silva v. Witschen,* 19 F.3d 725, 728 n. 4 (1st Cir.1994) (appellant must bear responsibility for omitting material items from appellate record) (citing Fed.R.App.P. 10(b), 11(a)); *see also* 1st Cir.R. 11(c).