**Charles LAROU, Plaintiff, Appellant,**

v.

**Wesley RIDLON, in his official and individual capacity as Sheriff of Cumberland County, Defendant, Appellee.**

No. 96–1229.

United States Court of Appeals,
First Circuit.

Heard July 31, 1996.

Decided Oct. 28, 1996.

Stuart Tisdale, Portland, ME, for appellant.

William R. Fisher, with whom Monaghan, Leahy, Hochadel & Libby was on brief, for appellee.

Before TORRUELLA, Chief Judge, CYR and LYNCH, Circuit Judges.

CYR, Circuit Judge.

Appellant Charles LaRou challenges the district court's summary judgment rulings rejecting his political discrimination claims against Cumberland County (Maine) Sheriff Wesley Ridlon. We affirm the district court judgment.

## I

### BACKGROUND [1]

Approximately two years after LaRou joined the Cumberland County Sheriff's Department ("Department") in April 1989, he was designated "Lieutenant, Programs Coordinator" by Sheriff Ridlon. Previously, Ridlon had told LaRou that one of his new responsibilities would be to gather adverse information that might enable Ridlon to fire Sergeant Christopher Muse, whom Ridlon considered a political rival.[2] LaRou responded that he would keep his eyes open, but would not participate in a witch hunt. De-

spite repeated requests from Ridlon, LaRou reported no adverse information about Muse. Ridlon nevertheless appointed LaRou to a captaincy and made him the Administrative Aide responsible for inmate programs and officer training (Administrative Aide/Programs) in October 1991.

In November 1993, however, all three captains in the Department, including LaRou, were reassigned to newly-created "shift commander" positions. The transfer memo stated that the shift commander assignments were to remain in effect until further notice. LaRou regarded his new night shift commander assignment as a temporary demotion, even though he had been relieved of all training program duties and a Ridlon political supporter had been appointed to succeed him as Administrative Aide/Programs. LaRou was never told that he would or would not be redesignated Administrative Aide/Programs.

In December 1993, Sergeant Muse first informed LaRou that he intended to run against Ridlon for the Democratic nomination for Sheriff. Although LaRou thereafter actively supported the Muse campaign, Ridlon ultimately won both the Democratic nomination and, on June 14, 1994, a second term as Sheriff.

In January 1995, while still serving as the night shift commander, LaRou saw a posting for the position of "Programs Manager," which he believed to be essentially identical to his previous position of Administrative Aide/Programs. LaRou promptly contacted the Cumberland County Personnel Manager, who advised that as far as Cumberland County was concerned LaRou was still the Administrative Aide/Programs. LaRou did not apply for the newly-posted position, however, because he felt that it remained his by right and that he was being forced out by Ridlon in retaliation for supporting Muse in the 1994 political campaign.

The district court rejected LaRou's retaliation claim relating to the November 1993

---

1. The material facts in genuine dispute are related in the light most favorable to LaRou. *Velez–Gomez v. SMA Life Assur. Co.*, 8 F.3d 873, 875 (1st Cir.1993).

2. In 1990, Muse had gone to Ridlon and informed him that he planned to run against Ridlon in 1994.

"demotion" to night shift commander as a "chronological impossibility," given the statement by Muse that LaRou had been the first person in the department whom he had told (in *December* 1993) about his plan to run for Sheriff, which was *after* LaRou's *November* 1993 "demotion" to night shift commander.[3] Second, the district court ruled that the retaliation claim based on the wrongful permanent elimination, in January 1995, of the Administrative Aide/Programs position previously held by LaRou, amounted to a mere restatement of the November 1993 retaliatory "demotion" claim, and hence was not actionable.

## II

### DISCUSSION

#### 1. The Standard of Review

■ We review a grant of summary judgment *de novo*, *Velez–Gomez*, 8 F.3d at 874–75, and will affirm it if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a nonpolicymaking governmental employee, LaRou could only avert summary judgment on his political discrimination claim—

> by pointing to evidence in the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.... Without more, a nonmoving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment.

*Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994) (citations omitted).

#### 2. The 1993 Retaliation Claim

■ LaRou claims on appeal that Ridlon (i) knew Muse planned to oppose Ridlon in the 1994 primary, *see supra* note 2, (ii) Ridlon originally promoted LaRou with instructions to find grounds for dismissing Muse,

and (iii) LaRou ultimately was "demoted" for failing to provide Ridlon with adverse information about Muse and for forming instead a successful working relationship with Muse. The 1993 retaliation claim fails, however, even assuming Ridlon caused LaRou to be "demoted" based on a retaliatory motive, since LaRou was engaged in no protected political activity at the time.

The First Amendment protects nonpolicymaking public employees from discrimination based on their political beliefs or affiliation. *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). *See also Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 34 (1st Cir.1996). The plaintiff-employee in a political retaliation case "must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that [his] constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind" the adverse employment action taken by the defendant official. *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993). The burden then shifts to the defendant official to articulate a nondiscriminatory basis for the adverse employment action, and prove by a preponderance of the evidence that the adverse action would have been taken regardless of any discriminatory political motivation. *Id.* See also *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Under the *Mt. Healthy* burden-shifting analysis, LaRou's retaliation claim falters at the outset. In similar circumstances, *see Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49 (1st Cir.1990), we rejected a political discrimination claim that an administrator had been constructively discharged from the judicial branch of the Commonwealth of Puerto Rico due to his prior association with a former judge who held political views at odds with the defendant officials. We explained that—

> a politically charged atmosphere ..., without more, provide[s] no basis for a reasonable inference that defendants' employment decisions about *plaintiff* were tainted

---

**3.** We do not reach this ground.

by their disregard of *plaintiff's* first amendment rights. Absent a constitutionally protected aspect, a "close relationship" with a third party is insufficient ... notwithstanding that consideration of *the third party's political beliefs* may have entered into the decisionmaking calculus.

*Id.* at 58 (citation omitted). As we stressed in *Correa–Martinez,* the plaintiff is required to show that "a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics." *Id. See also Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992) (plaintiff-employee must show causal connection between his political affiliation and the adverse treatment).

▮ LaRou claims he was "demoted" to night shift commander because he did not abide by Ridlon's instructions to gather information which would enable Ridlon to fire Muse. LaRou does not claim, however, nor does the record indicate, that LaRou provided Muse with political support prior to his alleged "demotion" in November 1993. Although Ridlon and Muse had had political differences as early as 1990, as of November 1993 Ridlon and LaRou had not; and LaRou does not claim that he then knew Muse intended to oppose Ridlon.[4] Thus, for aught that appears in the record, LaRou's relationship with Muse in November 1993 was not political.

LaRou himself asserts that he chose not to provide Ridlon with adverse information about Muse because he and Muse had developed a successful professional relationship, which resulted in many noteworthy advances in officer-training procedures. Conspicuously absent is any suggestion that LaRou was motivated by Muse's political plans, affiliation, or beliefs.[5] Since the record does not disclose that LaRou was engaged in any protected political activity, the alleged "demotion" in November 1993 did not give rise to a cognizable political discrimination claim even assuming Ridlon's adverse employment action was based on his political differences with Muse, and he took those differences out on LaRou. *See Correa–Martinez,* 903 F.2d at 58.

### 3. *The 1995 Job Posting*

LaRou attempts to assert a discrete retaliation claim in connection with the January 1995 posting of the "Programs Manager" position. Up until that time, LaRou says, he had believed that his November 1993 "demotion" to night shift commander was merely temporary, and that he would be returned to his former position some day. He adds that the position title was changed at the time of the posting in January 1995 to justify his final removal, and that his "permanent" loss of the position in 1995 was in retaliation for his support of Muse's 1994 bid for Sheriff. The 1995 retaliation claim nonetheless fails because LaRou was subjected to no cognizable adverse employment action as a result of the simple posting of the "Programs Manager" position in January 1995. *See Connell v. Bank of Boston,* 924 F.2d 1169, 1179 (1st Cir.), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991)[6] ("Most cases

---

4. At his deposition, LaRou was asked whether he and Muse had ever discussed Muse's political campaign prior to LaRou's "demotion" in November, 1993. After stating that it was "most likely" that such a conversation occurred, LaRou explained:

> I was moved out in November of '93 and that was very early—very early. And if there was ever any mention of it, it certainly wasn't a strategic mentioning because there was no strategy at that time. That's very early. So there may have been a sideline comment, there may have been a joke made. I really couldn't say. Nothing jumps up at me of a conversation or anything, but I wouldn't doubt that it happened. It could have happened.

LaRou Dep. at 88.

5. In his affidavit, LaRou indicates that he undertook to scrutinize Muse's job performance for Ridlon, but later developed a close working relationship with Muse.

6. Although *Connell* involved ADEA claims rather than § 1983, its analysis is persuasive. The fundamental meaning of "adverse employment action" should remain constant regardless of the particular enabling statute, given their similar anti-discriminatory purpose. Indeed, in *Blackie v. State of Maine,* 75 F.3d 716, 725 (1st Cir.1996), a case involving the Fair Labor Standards Act, this court observed generally that "[i]n a retaliation case, as in virtually any other discrimination case premised on disparate treatment, it is essential for the plaintiff to show that the employer took a materially adverse employment action against him."

involving a retaliation claim are based on an employment action which has an adverse impact on the employee, i.e., discharge, demotion, or failure to promote."); *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990); *Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir.1994).

We first examine the particular retaliatory action relied upon by the plaintiff employee to determine whether it had the requisite adverse effect. *Id.; cf. also Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir.1996) (noting that "determining whether an action is materially adverse necessarily requires a case-by-case inquiry.") (Fair Labor Standards Act case). Even assuming, without deciding, that the generous definition of "adverse employment action" propounded in *Blackie* likewise applies here, LaRou cannot bring the present claim within it.[7] Under *Blackie*, LaRou might make out a retaliation claim were he to demonstrate that Ridlon had refused to promote (or transfer) him to the Programs Manager position posted in 1995, or refused to consider him for the position despite a duty to do so.

Although LaRou contends that the mere posting of the Programs Manager position in 1995 adversely affected his employment because at the time he still "believed" he would be returned to his prior position as Administrative Aide/Programs, he offers no evidence which would enable a rational trier of fact to find that this "belief" was based on anything but conjecture. Similarly, he proffers no evidentiary foundation for the stated belief that his transfer to shift commander in November 1993 was temporary.

LaRou baldly attests in his affidavit that he was told the transfer to shift commander was to be temporary, without identifying, either by name or position, the source of the hearsay statement. Thus, the unattributed statement is incompetent, *see* Fed.R.Civ.P. 56(e) (affidavit "shall set forth such facts as would be admissible in evidence"), since it is inadmissible hearsay, *see* Fed.R.Evid. 801(d)(2) (out-of-court statement offered for truth of matter asserted not hearsay if attributable to party-opponent or agent). *See also Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1094 (1st Cir.1995).

The only competent record evidence indicates that the November 1993 "demotion" was permanent. According to Frank Amoroso, Cumberland County Jail Administrator, the 1993 realignment of the three captains was part of an overarching plan. The Administrative Aide/Programs position was to be eliminated—and with it one captaincy—and replaced with a Programs Manager position. Moreover, Amoroso explained the plan to the three captains, including LaRou, at a staff meeting, and requested their input. Thus, LaRou proffers no competent evidence to remove the 1995 job posting claim from "the realm of speculative, general allegations." *See Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1173 n. 5 (1st Cir.1988).

LaRou asserts that he called the personnel director after seeing the Programs Manager position posting, and was told that, as far as Cumberland County was concerned, he was still the Administrative Aide/Programs. This statement cannot help LaRou, however, since he *concededly knew that the newly posted Programs Manager position encompassed his former position* of Administrative Aide/Programs, *yet he elected not to apply* for the newly posted position. In these circumstances, reliance on the personnel director's statement, indicating merely that no official change of status had been noted in LaRou's personnel file, is patently insufficient to generate a trialworthy issue.

Absent some competent evidentiary basis for the stated belief that the 1993 transfer was merely temporary, at the very least LaRou plainly bore the responsibility to apply for the posted position which he knew encompassed his former position. Failing which, we are at a loss to understand how

---

7. In *Blackie*, we stated:
   Typically, the employer must (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities; or (2) withhold from the employee an accoutrement of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service.
   *Id.* (citations omitted).

the 1995 posting alone could be found to have been "retaliatory." Even assuming the newly posted position were LaRou's by right, he does not explain how Ridlon could be found to have acted out of a retaliatory motive simply in posting the position in 1995, absent any evidence that Ridlon knew LaRou claimed his former position or was interested in the newly posted position. Without such evidence, it was incumbent upon LaRou to alert the appropriate decisionmakers to his interest in, or claim to, the posted position.[8] Thus, LaRou failed to generate a trialworthy claim that Ridlon harbored an actionable retaliatory motive in posting the programs manager position in 1995.

■ Finally, given the unchallenged evidence that LaRou elected not to apply for the newly posted position in 1995, he cannot point to a plausible dispute that Ridlon engaged in an "adverse employment action" simply by posting the programs manager position. *See Boarman v. Sullivan*, 769 F.Supp. 904, 910–11 (D.Md.1991); *cf. also Sinai v. New England Tel. and Tel. Co.*, 3 F.3d 471, 474 (1st Cir.1993), *cert. denied*, — U.S. —, 115 S.Ct. 597, 130 L.Ed.2d 509 (1994) (Title VII); *Sherpell v. Humnoke Sch. Dist. No. 5 of Lonoke Cty.*, 750 F.Supp. 971, 980 (E.D.Ark.1990), *aff'd*, 985 F.2d 566 (8th Cir.1991) (finding that "there could be no 'adverse employment action' by defendant until plaintiff applied for a job") (Title VII discrimination and retaliation claims). We accordingly hold that the mere posting of a position does not constitute an "adverse employment action" even though the position posted is known to encompass a prior position from which the plaintiff was demoted or transferred, provided the plaintiff received proper notice of the posted position and elected not to apply.

*The district court judgment is affirmed, without costs to either party.*

---

8. Although LaRou claims to have sent a letter to the personnel director explaining why he was not applying for the newly posted position, it is not included in the record on appeal. *See Real v. Hogan* 828 F.2d 58, 60 (1st Cir.1987)("If [the record] proves inconclusive, it is the appellant who must bear the brunt of an insufficient record on appeal."). *See also Moore v. Murphy*, 47 F.3d 8, 10–11 (1st Cir.1995); *United States v. Mottolo*, 26 F.3d 261, 264 n. 3 (1st. Cir.1994).