Maria ALDARONDO–LUGO,
et al., Plaintiffs

v.

Mayor Víctor J. SANTIAGO–DÍAZ,
et al., Defendants/Third–Party
Plaintiffs

v.

Víctor Soto, et al., Third–
Party Defendants.

Civil No. 02–1123 (JP).

United States District Court,
D. Puerto Rico.

March 12, 2008.

---

Andrés Guillemard–Noble, Esq., Monique Guillemard–Noble, Esq., Nachman & Guillemard, Héctor J. Quijano–Borges, Esq., Ricardo L. Rodríguez–Padilla, Esq., Rodriguez Padilla Law Office, San Juan, PR, Mariela Pérez–Torres, Esq., Guaynabo, PR, for Plaintiffs.

Carlos Del Valle–Cruz, Esq., Rivera & Assoc., Isabela, PR, Eduardo A. Vera–Ramírez, Esq., Luis A. Alvarado–Hernández, Esq., Landrón & Vera LLP, Claudio Aliff–Ortiz, Esq., Michael C. McCall, Esq., Aldarondo & López–Bras, Guaynabo, PR,

Kenneth Colón–Alicea, Esq., San Juan, PR, for Defendants.

### OPINION AND ORDER

JAIME PIERAS, JR., Senior District Judge.

Before the Court is Defendants' motion for summary judgment (No. 79)[1], Plaintiffs' opposition thereto (No. 163), Defendants' reply (No. 171), and Plaintiffs' sur-reply (No. 187). Plaintiffs brought this lawsuit pursuant to 42 U.S.C. Section 1983 ("Section 1983") and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, Sections 5141–5142, alleging that Defendants violated their rights under the First and Fourteenth Amendments of the United States Constitution by discriminating against them because of their political beliefs and by depriving them of their due process rights. The Court dismissed Plaintiffs' Fourteenth Amendment and punitive damages claims on August 3, 2004 (No. 158). Defendants now move the Court for summary judgment on Plaintiffs' remaining claims of violations of their First Amendment rights on the ground that Plaintiffs have failed to establish a *prima facie* case of political discrimination. For the reasons stated herein, Defendants' motion for summary judgment (**No. 79**) is **GRANTED.**

### I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

#### A. Factual Background

The original Plaintiff group in this lawsuit consisted of ninety-eight employees and former employees of the Municipality of Toa Baja ("the Municipality"), who all belonged to the New Progressive Party ("NPP"). Plaintiffs' claims arise from a process of re-classification undertaken by the new mayor of the Municipality, Víctor Santiago–Díaz ("Santiago") upon assuming office in January, 2001. Santiago, a member of the Popular Democratic Party ("PDP"), defeated Víctor Soto ("Soto"), the former mayor (and NPP member) who had held the office of mayor for the prior sixteen years. Defendant Milagros Delgado ("Delgado") is the former Human Resources Director of the Municipality.

In July of 1991, the Municipality adopted a Classification and Retribution Plan for the Career and Trust Services (the "1991 Plan"). The 1991 Plan was approved by the Office of Labor Counseling and Administration of Human Resources ("OCALARH") and adopted pursuant to the Personnel Public Service Act, Act No. 5, of October 14, 1975. In July 1993, the Municipal Assembly approved amendments to the 1991 plan. In 1997, the Municipality made certain changes (the "1997 Changes") to the classifications and salaries of municipal employees as per a document entitled "Amendments to the Classification and Retribution Plan of 1991." It was ultimately approved as Ordinance No. 8 on July 29, 1997. The 1997 Changes had not been submitted to OCALARH for approval.

Upon assuming office in January 2001, Defendants Santiago and Delgado found that the former mayor, Soto, had appointed numerous individuals to regular career positions in violation of the applicable law. They also found that the Comptroller for the Commonwealth of Puerto Rico (the

---

1. This document was originally filed as a reply by Defendants Víctor Santiago–Díaz and Milagros Delgado–Ortiz, in their personal capacities, to Plaintiffs' opposition to Defendants' motion for summary judgment (No. 64) as to due process claims, qualified immunity and punitive damages. The Court ruled on August 2, 2004 (No. 156), that Defendants' reply (No. 79) was to be treated as a motion for summary judgment alleging that Plaintiffs failed to establish a *prima facie* case of political discrimination under the First Amendment (No. 156).

"Comptroller") issued a report (the "Audit Report"), covering the period of January 1, 1996, to December 31, 1998, which contained findings regarding the appointment of municipal personnel. The Audit Report of June 14, 2000, concluded that Mayor Soto had illegally appointed certain employees and had improperly raised the compensation of many employees in spite of the Municipality's precarious financial condition.

Specifically, the Audit Report found, *inter alia*, that: 1) from February 1985 to October 1987, Soto appointed twenty-two of his own family members as employees, and eleven family members of municipal legislators as employees; 2) twenty-one of these appointed employees did not have the background and minimum requirements for the positions to which they were appointed; and 3) some of the employees received salaries in excess of the maximum compensation set in the Municipality's Uniform Class and Retribution Plan. It is important to note that the Comptroller belonged to the NPP, the same party as the administration which he criticized in his report.

In the Audit Report, the Comptroller summarized the financial situation of the Municipality as a "constant pattern of irregular behavior in relation to the administrative and fiscal procedures of th[e] Municipality." Upon assuming office, Defendant Santiago encountered a deficit of sixteen million dollars, outstanding debt to suppliers of eleven million dollars, and debt to the government of Puerto Rico in the amount of fifty-three million dollars. As this Court held in its earlier Opinion and Order (No. 157), when the PDP administration took office in January of 2001, it inherited what could be described as a "badly-administered NPP fiefdom."

The new administration embarked on a Corrective Action Plan to address the Comptroller's findings. As part of the plan, the new administration consulted with OCALARH and the Office of the Commissioner of Municipal Affairs ("OCAM"). At that time, these government agencies were unanimous in their view: the 1997 Changes were null and void because they had not been approved by OCALARH, and the employees had to be placed within the framework of the 1991 Plan. The Municipality undertook its review of all employee personnel files. Once the results were available, Defendant Santiago sent letters to all employees who could be affected by personnel transactions. These letters apprised the employees of their right to a hearing before an Independent Hearing Examiner ("IHE"). A hearing was held for those employees who requested it, and the IHE issued his or her own report. A second letter was sent to those employees who had requested a hearing informing them of the IHE's recommendation. If the IHE was in agreement with the Municipality's initial determination with respect to an employee, such employee was informed of the effective date of the change in his or her status, position and salary. These employees were also informed of their right to seek a review from the Board of Appeals of Personnel Administration.

Plaintiffs argue that the Comptrollers' findings were used as an excuse to undertake personnel actions against them in violation of their First Amendment rights. Plaintiffs focus their argument on the 1997 Changes, which were used to appoint Plaintiffs to their original positions. Plaintiffs support a characterization of the 1997 Changes as amendments to the 1991 Plan, as opposed to a new plan, for the following reason: under Article 11.028 of Act No. 81, employee classification and retribution plans must be approved by OCALARH. However, mere plan amendments do not need to be approved by such office. Plaintiffs allege that the 1997 Changes were not

approved by OCALARH simply because approval was not required, as they were actually amendments rather than a new plan.

### B. *Procedural History*

Defendants initially filed a motion for summary judgment on the grounds of qualified immunity and failure to state a claim under Section 1983 for deprivation of their First Amendment rights. On August 3, 2004, the Court entered Judgment (No. 158) dismissing Plaintiffs' claims against Defendants Santiago and Delgado in their personal capacities on qualified immunity grounds, except those claims asserted by Plaintiffs who had suffered only harassment (the "Harassment Group"). The Court also dismissed the statutory punitive damages claims by Plaintiffs other than the Harassment Group. Since entry of that Judgment, the Harassment Group reached a settlement with Defendants and are no longer parties to this lawsuit (No. 269).[2] In its Opinion and Order (No. 157) on Defendants' motion for summary judgment, the Court granted qualified immunity to Defendants Santiago and Delgado without reaching the merits of Plaintiffs' First Amendment claims. As such, Plaintiffs' First Amendment claims for political discrimination against Santiago and Delgado, in their official capacities, and against the Municipality, remain pending before the Court. Defendants now move the Court for summary judgment on these claims, asserting that Plaintiffs failed to state a *prima facie* case of political discrimination.

---

**2.** The names of the Harassment Group Plaintiffs are: Heriberto Berríos–Ortiz, Jorge Centeno, Ada V. Cruz–Rivera, Angel L. López–Reyes, Reina L. Montalvo–Padilla, Marta V. Ortiz–García, Wilda Reyes–Cortés, and María V. Torres–Rivera.

## II. *MATERIAL FACTS NOT IN GENU-INE ISSUE OR DISPUTE*

The following facts were stipulated by the parties during the Initial Scheduling Conference, held on June 25, 2002:

1. On November 7, 2000, general elections were held in Puerto Rico. Santiago, the PDP candidate for mayor of the Municipality, defeated Soto, the NPP candidate.

2. At the time of his defeat, Soto had been the mayor of the Municipality for sixteen years (1985–2001).

3. The NPP had held control of the Municipality for twenty-four years.

4. Santiago assumed office in January 2001.

5. The Municipality is a unit of local government pursuant to Act. No 81 of August 30, 1991, known as the Law of Autonomous Municipalities of Puerto Rico, as amended, 21 P.R. Laws Ann. Sections 4001–4008 ("Act No. 81"), and has legal capacity to sue and be sued.

6. All Plaintiffs worked as employees of the Municipality during Soto's tenure as mayor.

7. The Comptroller of Puerto Rico performed an audit of the Municipality and submitted a report of his findings—Audit Report M–00–40—for the period covering January 1, 1996 through December 31, 1998, but "in some aspects, operations of prior and subsequent dates were examined."

In its Opinion and Order of August 3, 2004 (No. 157), the Court made the following findings of fact based on the record:[3]

---

**3.** The Court notes that no additional facts were set forth by Plaintiffs in their opposition to summary judgment (No. 163). As such, the Court leaves undisturbed the findings of fact from its prior decision (No. 157).

1. In the Audit Report, the Comptroller summarized the situation as a "constant pattern of irregular behavior in relation to the administrative and fiscal procedures of th[e] Municipality."

2. The Municipality adopted a Classification and Retribution Plan for the Career and Trust Services that dated from July 1991 (the "1991 Plan"). Such plan was adopted pursuant to the Personnel Public Service Act, Act No. 5 of October 14, 1975.

3. The Municipality adopted certain amendments to the 1991 Plan in 1993.

4. On July 27, 1993, Oscar Ramos Meléndez, former director of the Central Office of Personnel Administration ("OCAP"), sent a letter to the former mayor of the Municipality, Soto.

5. In 1997, the Municipality made certain changes to the classifications and salaries of municipal employees (the "1997 Changes"). The document was entitled "Amendments to the Classification and Retribution Plan of 1991" and was ultimately approved as Ordinance No. 8 on July 29, 1997.

6. The 1997 Changes had not been submitted to the Central Office of Work Assistance and Human Resources Administration ("OCALARH") for approval.

7. On December 11, 1997, the former director of OCALARH—Aurea González–Ríos, sent a letter to Hilda E. Acevedo–Caraballo—former President of the Municipality's Municipal Assembly.

8. María Sánchez–Corraliza, an employee of the Municipality's Human Resources Department, met with Santiago in January and February of 2001.

9. On February 8, 2001, Angel T. Aguiar–Leguillou, OCALARAH Acting Director, sent a letter to Santiago.

10. On March 30, 2001, Bárbara M. Sanfiorenzo–Zaragoza from the Office of the Commissioner of Municipal Affairs ("OCAM"), sent a letter to Ms. Delgado.

11. On May 29, 2001, Emmalind García–García, OCALARH administrator, sent a letter to Santiago.

12. On November 28, 2001, García–García, sent a second letter to Santiago.

## III. *LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT*

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated

that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman*, 985 F.2d at 1116.

## IV. ANALYSIS

Defendants move for summary judgment on the ground that Plaintiffs fail to state a *prima facie* case of political discrimination. Plaintiffs brought this action under Section 1983, alleging that Defendants discriminated against them because of their affiliation with the NPP. Section 1983 creates a cause of action against those who violate federal laws while acting pursuant to state government authority. 42 U.S.C. § 1983. Plaintiffs allege that Defendants violated their rights to freedom of speech and association under the First Amendment. The First Amendment protects associational rights, including the right to be free from discrimination on the basis of political opinions or beliefs. *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir.2004); *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996).

To establish a *prima facie* case of political discrimination in violation of the First Amendment, a plaintiff must demonstrate that he or she engaged in constitutionally-protected conduct and that political affiliation was a substantial or motivating factor behind the challenged state action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Cosme–Rosado v. Serrano–Rodríguez*, 360 F.3d 42, 47 (1st Cir.2004). The plaintiff must point to evidence on the record which, if credited, would permit a rational fact-finder to conclude that the challenged action occurred and stemmed from politically-based discriminatory animus. *González–De–Blasini v. Family Dep't*, 377 F.3d 81, 85 (1st Cir.2004).

Though the First Circuit has not definitively established the quality or quantity of evidence that meets this *prima facie* test, it has held that "juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly," *Padilla–García v. Guillermo Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000), or "mere temporal proximity between a change of administration and a public employee's dismissal," *Acevedo–Díaz v. Aponte*, 1 F.3d 62, 69 (1st Cir.1993), is not sufficient. On the other hand, "a highly charged political atmosphere occasioned by [a] major political shift from the NPP to the PDP throughout the Commonwealth of Puerto Rico ... coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." *Id.* (emphasis in original) (quotation marks and citations omitted).

■■■ If the evidence on the record satisfies the plaintiffs' *prima facie* burden, the burden of persuasion shifts to the defendants to proffer a nondiscriminatory reason for their actions. *See Padilla-García*, 212 F.3d at 77–78 (stating, "[i]n a political discrimination case, the defendant bears the burden of persuading the factfinder that its reason is credible"); *Acevedo-Díaz*, 1 F.3d at 67 (explaining that, in contrast to Title VII cases, the "burden of persuasion itself passes to the defendant-employer" in political discrimination cases). However, evidence that the defendants' explanation of the adverse employment action is a mere pretext also helps the plaintiffs meet their *prima facie* burden and shift the burden of persuasion to the defendants. *See Acevedo-Díaz*, 1 F.3d at 68, 70.

### A. *Guiding Precedent*

Since this lawsuit has been pending since 2002, and additional complaints were filed before other judge of this Court arising out of the same fact pattern, the Court has the benefit of reviewing the opinions that have been issued during the lifespan of this case. The Court looks specifically to two opinions for guidance in the resolution of Defendants' summary judgment motion. The first is the Court's earlier decision granting qualified immunity to Defendants Santiago and Delgado in their personal capacities (No. 158), *Aldarondo-Lugo v. Municipality of Toa Baja*, 329 F.Supp.2d 221 (D.P.R.2004) (Pieras, J.). Although the Court clarified that it was not reaching the merits of the First Amendment issue in this decision, it set forth several findings that are relevant to the Court's inquiry here. Specifically pertinent is the Court's prior holding that Defendants provided solid evidence of a lack of discriminatory animus. The Court will discuss its detailed findings in relation to Plaintiff's *prima facie* burden in more detail below.

The second opinion of utmost importance here is the Opinion and Order (No. 190) on Defendants' motion for summary judgment in the case of *Alicea-Cosme, et. al., v. Santiago-Díaz, et al.* (02–1794) (Fusté, J.). Here, the Court considered facts nearly identical to those pending here. The plaintiffs' allegations in the case of *Alicea-Cosme* stemmed from the same 2001 change of administration in the Municipality of Toa Baja, and the subsequent re-classification of employees in the Municipality. The *Alicea-Cosme* Court held that the group of plaintiffs who allegedly received letters from Defendant Santiago, but did not allege any further unfair treatment or form of adverse employment action, failed to state a *prima facie* case of political discrimination. The *Alicea-Cosme* Court also found that a number of remaining plaintiffs who asserted that they were subject to disparaging treatment in addition to the letter outlining a possible change in employment status failed to state a *prima facie* case of political discrimination.

For the remaining plaintiffs, the *Alicea-Cosme* Court conducted a two-part burden-shifting analysis to evaluate the plaintiffs' claims of political discrimination, and held that the plaintiffs failed to proffer evidence of any specific discriminatory conduct which proved that their political patronage was a substantial factor in the alleged adverse employment decisions taken against them. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. The Court considered several factors to determine whether there was discriminatory animus: the defendants' knowledge of the plaintiffs' political affiliation, the allegations of a politically charged atmosphere in the workplace, the defendants' retention of NPP employees, and the findings of the Audit Report. After careful consideration of these facts, the *Alicea-Cosme* Court held that the plaintiffs failed to proffer evidence

to conclude that Defendants acted with discriminatory animus. This very same factual scenario, albeit involving different plaintiffs, exists in the instant case.

It is important to note that both of these prior decisions emphasize that it is not necessary for the Court to determine whether the 1997 Changes were a new plan, or merely amendments to the 1991 Plan. Rather, the crucial element in considering Plaintiffs' political discrimination claims is to determine whether discriminatory political animus was the motivating factor behind Defendants' re-classification actions. With this in mind, the Court will now analyze Plaintiffs' *prima facie* showing of political discrimination.

### B. *No Adverse Employment Action*

 Defendants argue that a group of thirty-one Plaintiffs whose claims stemmed from letters of intent issued by Defendants suffered no adverse employment action, and thus their political discrimination claims must be dismissed. In a political discrimination case, "it is essential for the plaintiff to show that the employer took a materially adverse employment action against him." *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir.1996). An employment termination in violation of a plaintiff's First Amendment rights constitutes an adverse employment action. *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). However, the First Amendment's protection against political discrimination applies to adverse employment decisions that fall short of termination, including promotions, transfers and recalls after layoffs. *Id.* Outright demotions, which involve reductions in pay and official rank, are equivalent to discharges in political discrimination cases. *Agosto–de–Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1218 (1st Cir.1989).

 Typically, to demonstrate an adverse employment action, an employer must:

1) [T]ake something of consequence from an employee, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities; or

2) withhold from an employee an accoutrement of the employment relationship, by failing to follow a customary practice of considering her for promotion after a particular period of service.

*LaRou v. Ridlon*, 98 F.3d 659, 663 (1st Cir.1996), citing *Blackie*, 75 F.3d at 725. However, the mere threat of changed employment conditions is insufficient grounds on which to base a charge of political discrimination. *See Breaux v. City of Garland*, 205 F.3d 150, 159–60 (5th Cir.2000).

 Defendants in the case at hand argue that one group of Plaintiffs received a letter that explained the deficiencies found in their positions, the corrective action that the Municipality intended to take, and their right to an administrative hearing. However, Defendants allege that these Plaintiffs never received a second letter implementing the proposed corrective actions. This group of Plaintiffs continued to perform the same job functions and to receive the same compensation for their work. As such, Defendants allege that these Plaintiffs failed to state a claim of political discrimination, as no adverse employment action could be proven.

 Considering the evidence in the light most favorable to Plaintiffs, the Court finds Plaintiffs failed to proffer any evidence to support a *prima facie* basis for political discrimination against the group of Plaintiffs who received letters of intent only. Service of a letter of intent to effect corrective action, without any further action being taken, does not constitute an adverse employment action. *See LaRou,*

98 F.3d at 663. The Court will therefore dismiss the claims of all Plaintiffs who alleged receipt of a letter of intent without a further reduction in salary or position.

### C. *Lack of Discriminatory Animus*

For the remaining Plaintiffs' claims of political discrimination, the Court must consider the first prong of the two-part burden shifting analysis set forth by *Mt. Healthy, supra.* To evaluate whether Plaintiffs state a *prima facie* case of political discrimination, the Court must determine whether Plaintiffs engaged in constitutionally protected conduct, and whether this conduct was a motivating factor for the Defendants' alleged adverse employment actions.

### 1. *Awareness of Political Affiliation*

■ To demonstrate that political affiliation was the motivating factor in Defendants' decision to re-classify Plaintiffs, Plaintiffs allege that Defendants were aware of their political affiliation because of a poll taken by Defendant Santiago during his campaign.

■ It is well-established that statements of political affiliation, unaccompanied by specific factual information to support them, and unrelated to any employment action taken by a defendant against a plaintiff, are patently insufficient to establish an act of political discrimination. *López–Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir.2000). The United States Court of Appeals for the First Circuit held, in a case involving a nearly identical factual scenario to the one at hand, that the fact that Defendant Santiago met with plaintiffs during routine campaign canvassing, and that plaintiffs identified themselves as members of the NPP and employees of Mayor Soto, does not lead to a reasonable inference that the defendants knew that plaintiffs were members of the NPP when they conducted their review of personnel files during the re-classification process. *Vázquez–Valentín v. Santiago–Díaz*, 385 F.3d 23, 37 (1st Cir.2004) (reversed and remanded on other grounds); *see also González–De-Blasini v. Family Dep't*, 377 F.3d 81 (1st Cir.2004) (dismissing the plaintiff's political discrimination claim on the grounds that the plaintiff was able to show only 1) that she was a well-known NPP supporter, 2) she previously held a trust position, and 3) she was allegedly demoted after the PDP assumed power—all of which, taken together, did not suffice to show the defendants' awareness of her political affiliation).

Given the large number of Toa Baja residents polled, and the large number of employees reviewed during the re-classification, the Court holds that the poll taken by Defendant Santiago does not prove that Defendants were aware of Plaintiffs' political affiliation.

### 2. *Discriminatory Personnel File Review*

Plaintiffs allege that Defendants demonstrated discriminatory political animus through their methodology in reviewing the personnel files for the re-classification. However, the Court held in its earlier Opinion and Order (No. 157), that 1) Defendant Santiago had not selectively picked the files that were reviewed, but rather all employee files were reviewed, 2) the fact that municipal employees who performed file review did not receive any particular training was not evidence of discriminatory animus, and 3) Plaintiffs' claim that the reviewers of files were hand-picked by Defendants did not show that the review process was tainted by discriminatory animus. This same finding applies to the Court's analysis of the review process in light of Plaintiffs' *prima facie* burden of proof. As such, Plaintiffs fail to

demonstrate discriminatory animus in Defendants' review of personnel files during the re-classification period.

### 3. *Discriminatory Comments*

■ Plaintiffs further allege that Defendants made insulting comments, within a politically charged atmosphere, rising to a level of political discrimination. A plaintiff's allegations of discriminatory comments fail to establish evidence of a *prima facie* case of political discrimination when the allegations are "based solely upon conclusory statements" and "lack any specific evidence." *Figueroa–Serrano v. Ramos–Alverio*, 221 F.3d 1, 8 (1st Cir.2000); *see also Cosme–Rosado v. Serrano–Rodríguez*, 360 F.3d 42, 48 (1st Cir.2004) (holding that the defendant mayor's comment regarding "his intention to rid the Municipality of NPP activists" did not amount to enough evidence to create an issue of fact to defeat the defendant's motion for summary judgment). The First Circuit has held, albeit in an age discrimination context, that stray workplace remarks typically are insufficient, standing alone, to establish the requisite discriminatory animus to support a discrimination claim. *González v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir.2002).

■ Here, certain Plaintiffs allege that Defendant Santiago referred to them as "political sweet potatoes." The Court understands this term to mean "political hack." *See In re Martínez–Catalá*, 129 F.3d 213, 219 (1st Cir.1997), citing *Rodríguez–García v. Dávila*, 904 F.2d 90, 100 n. 10 (1st Cir.1990). Plaintiffs also refer to Defendants' comments regarding the involvement of NPP legislators and employees in creating the gross indebtedness of the Municipality. Given the budget deficit awaiting Defendant Santiago upon assuming office, generic conversations regarding the cause of the fiscal problems do not lead to a finding of discriminatory animus. Plaintiffs fail to substantiate any other evidence of specific discriminatory comments made by Defendants. Although Plaintiffs allege that they were continually harassed and persecuted by politically motivated comments, their proffered evidence fails to support such a claim.

### 4. *Defendants' Rebuttal*

Although the Court does not need to consider the second-prong of the burden-shifting analysis set forth by *Mt. Healthy*, it will briefly address the Defendants' showing that they would have taken the same re-classification action regardless of the Plaintiffs' political beliefs. Defendants offered proof that they retained numerous employees from the previous NPP administration. Moreover, Defendants demonstrated to the Court that they relied on the Audit Report as a basis for their re-classification process to determine whether employees were hired lawfully after the 1997 Changes. This Audit Report was created by an NPP supporter, criticizing an administration comprised of his own party members. Therefore, even if the Court had found it necessary to conduct the second part of the *Mt. Healthy* analysis, it is likely that the Court would find a legitimate, non-discriminatory basis for Defendants' reclassification actions.

## V. *CONCLUSION*

Given that Plaintiffs failed to demonstrate that Defendants 1) were aware of their political affiliation, 2) conducted the personnel file review in a discriminatory manner, or 3) made comments that rose to the level of First Amendment discrimination, the Court holds that Plaintiffs failed to meet their *prima facie* burden of proof to show that political affiliation was a substantial or motivating factor behind the alleged adverse employment decisions taken against Plaintiffs.

Therefore, the Court **GRANTS** Defendants' summary judgment motion (No. 79). A separate judgment will be entered dismissing Plaintiffs' remaining claims for First Amendment violations under Section 1983 with prejudice.

**IT IS SO ORDERED.**