# United States Court of Appeals
## For the First Circuit

No. 06-2632

EMMA FERNÁNDEZ-VARGAS,
IN REPRESENTATION OF HER MINOR SON; C. J. P. F.,

Plaintiff,

v.

PFIZER (PARENT CORPORATION); JOHN DOE;
and/or FULANO DE TAL; ABC INSURANCE COMPANY;
LUIS ADORNO-CABÁN,

Defendants,

&

E. P. S., MINOR; R. P. S. MINOR
REPRESENTED BY THEIR MOTHER; ANABEL SÁNCHEZ-VALLE,

Defendants/Cross-Claimants, Appellants,

v.

PFIZER PHARMACEUTICALS, INC.,

Cross-Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. Chief District Judge]

Before

Lipez, Circuit Judge
Baldock,* Senior Circuit Judge
and Howard, Circuit Judge.

_____

* Of the Tenth Circuit, sitting by designation.

Mireya Baltazar-Suazo, with whom Orlando I. Martínez-Garcia and Abogados de América Law Offices were on brief for appellants.

Mariela Rexach-Rexach, with whom Teresa M. Seda-Ramos and Schuster Aguilo LLP were on brief for appellees.

_____

April 3, 2008

_____

**BALDOCK**, **Senior Circuit Judge**.  Vital to our resolution of this appeal is an understanding of the controversy's extensive and convoluted procedural history.  Our story begins in August 2003 when Luis Adorno-Cabán (Adorno) fatally shot Jaime Pagán-Avilés (Pagán).  The unfortunate incident occurred while both men were working at Pfizer's facility in Barceloneta, Puerto Rico.  Pagán's common law wife, Emma Fernández-Vargas (Fernández), and their minor son, C.J.P.F., survived him.  Pagán also left behind E.P.S. and R.P.S., two minor daughters from his prior marriage to Anabel Sánchez-Valle (Sánchez).  Pfizer is the Appellee in this appeal.  Sánchez is the Appellant.  Sánchez asserts the district court (1) lacked subject matter jurisdiction from the outset, (2) improperly dismissed her wrongful death cross-claim, (3) issued a judgment that was null and void, and (4) erroneously enjoined her from suing Pfizer in commonwealth court.  We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

Shortly after Pagán's death, Fernández filed a workmen's compensation claim with the Puerto Rico State Insurance Fund (SIF) on behalf of herself and C.J.P.F.  See 11 P.R. Laws, § 8.  In submitting her claim, Fernández disclosed the dependent status not only of Pagán's son, C.J.P.F., but also

of Pagán's two daughters, E.P.S. and R.P.S.  Sánchez did not file a separate claim with the SIF on behalf of E.P.S. and R.P.S.  After an investigation, the SIF denied Fernández's claim in a terse order:

> From the investigation conducted it is established that the aggression occurred when [Pagán's] co-worker, in a joking manner, threatened the injured party with a firearm that accidentally went off. Said aggression has no bearing whatsoever with the functions performed by the employee, nor with the functions performed by the assailant, it does not constitute an occupational risk nor a risk of the work environment, and the assailant was in violation of a . . . company rule, of not bearing arms on the employer's premises.

In re Pagán-Avilés, No. 04-07-00733-2, Order (P.R. State Ins. Fund, July 22, 2004) (Certified Translation MC-2007-330).  Because, according to the SIF, Pagán's death was "not related to his occupation," his death was not compensable under Puerto Rico's Work Accident Compensation Act (WACA). Id.  Fernández did not appeal the SIF's decision to the Puerto Rico Industrial Commission as permitted by the WACA. See 11 P.R. Laws § 11.

Instead, in August 2004, Fernández and Sánchez commenced separate lawsuits in Puerto Rico commonwealth court seeking damages related to Pagán's death.  Sánchez's wrongful death lawsuit named as plaintiffs herself and her two minor daughters, as well as Pagán's father, aunt, uncle, and brother.  Named defendants included Pfizer, Adorno, and the

medical personnel responsible for treating Pagán. Sánchez did not join Fernández or C.J.P.F. See Pagán-Valentín v. Pfizer Pharm., LLC, No. CDP-04-0212(403), Amended Complaint (Arecibo Sup. Pt., Oct. 27, 2004) (Certified Translation MC-2006-137).

Fernández filed a lawsuit on behalf of herself and C.J.P.F. Fernández named, among others, Pfizer and Adorno as defendants. Importantly, she also named E.P.S. and R.P.S. as defendants through their mother, Sánchez. According to the complaint, Fernández named E.P.S. and R.P.S. as defendants because (1) Sánchez had not authorized their joinder as plaintiffs, and (2) they might be entitled to share in a recovery as Pagán's heirs. See Fernández-Vargas v. Pfizer Pharm., Inc., No. CDP-04-0209(404), Complaint (Arecibo Sup. Pt., Aug. 3, 2004) (Certified Translation MC-2004-765).

Fernández's complaint alleged two theories of recovery. First, like Sánchez, Fernández alleged wrongful death against Pfizer and Adorno. Second, unlike Sánchez, Fernández alleged Pfizer had wrongfully denied her disability benefits. The latter claim arose from Fernández's status as a Pfizer employee. Fernández alleged she suffered emotional damages because Pfizer, instead of providing her with disability benefits, forced her to return

to work after Pagán's death.

Pfizer removed Fernández's action to federal district court in November 2004. Pfizer argued ERISA's preemption of Fernández's employee benefits claim made the claim removable under 28 U.S.C. § 1441(a). See 29 U.S.C. § 1132(a)(1)(B); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 207-08 (2004) (explaining that because ERISA completely preempted a state law cause of action, a claim coming within the scope of that cause of action, even if pleaded in terms of state law, was actually based in federal law). The district court's supplemental jurisdiction extended to Fernández's wrongful death claim, which arose under Puerto Rico law. See 28 U.S.C. § 1441(c).

Once in federal court, Pfizer moved to dismiss Fernández's complaint pursuant to Fed. R. Civ. P. 12(b)(6). Pfizer argued ERISA preempted Fernández's denial of benefits claim. Notwithstanding the SIF's prior decision that Pagán's death was "not related to his occupation," Pfizer further argued that because Pagán's death occurred in the course of his employment, Pfizer was immune from Fernández's wrongful death claim under WACA § 21. Section 21 provides:

> When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer, even in those cases where maximum compensations and benefits have been granted in accordance thereof; but in case of

-6-

accident to, or diseased or death of, the workmen or employees not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist.

11 P.R. Laws § 21 (emphasis added). The district court granted Fernández leave to file an amended complaint, while reserving ruling on Pfizer's immunity defense pending submission of an English translation of the SIF's decision.

Fernández filed her amended complaint in February 2005. Fernández again named Pagán's two daughters as defendants, through Sánchez, their mother. Fernández alleged wrongful death against Pfizer and Adorno. She also alleged Pfizer had improperly denied her disability benefits under an ERISA-covered plan: "Under 29 U.S.C. § 1132 plaintiff Emma Fernández is entitled to seek from Pfizer the benefits owed to her under the long term disability plan offered to her as an employee of Pfizer." Fernández-Vargas v. Pfizer Pharm., Inc., Civ. No. 04-2236 (JAF), Amended Complaint (D.P.R. February 22, 2005). "[A]s a further violation of ERISA," Fernández alleged Pfizer had wrongfully refused to tender the proceeds from Pagán's profit-sharing and stock-option plans. Pfizer answered by renewing its motion to dismiss Fernández's wrongful death claim. Pfizer again asserted employer immunity under WACA § 21. Additionally, Pfizer moved to dismiss Fernández's ERISA claims, arguing she

failed to exhaust the administrative remedies outlined in Pfizer's benefits plan.

Finally, in April 2005, Sánchez, on behalf of E.P.S. and R.P.S., appeared for the first time and answered Fernández's amended complaint. Sánchez acknowledged the district court's federal question and supplemental jurisdiction. Sánchez also filed a cross-claim, on behalf of her daughters, against Pfizer and Adorno for wrongful death. Sánchez's cross-claim set forth essentially the same allegations as those contained in the complaint she filed nine months earlier in the Puerto Rico commonwealth court.

Pfizer moved to dismiss Sánchez's cross-claim, yet again asserting employer immunity under WACA § 21. Sánchez received an extension of time until June 6 to oppose Pfizer's motion to dismiss her cross-claim. On June 7, Sánchez filed a second request for an extension. The district court did not grant the second extension. Instead, on June 8, the district court issued an Opinion and Order addressing Pfizer's respective motions to dismiss. See Fernández-Vargas v. Pfizer Pharm., Inc., 394 F. Supp. 2d 407 (D.P.R. 2005). That same day, the district court denied as moot Sánchez's second motion for an extension of time to respond to Pfizer's motion to dismiss.

The district court first denied Pfizer's motion to

dismiss Fernández's ERISA claims. According to the court, Fernández's allegation that Pfizer had refused to provide her benefits before she filed her lawsuit was sufficient to establish exhaustion under the notice-pleading standard. See Fed. R. Civ. P. 8(a). Second, the district court addressed whether Pfizer was entitled to immunity from suit under WACA § 21. The court initially considered the preclusive effect of the SIF's decision. Because Pfizer was not a party to the SIF proceedings, the court reasoned that Pfizer was not precluded from challenging the SIF's decision and asserting immunity under the Act. See Fernández-Vargas, 394 F. Supp. 2d at 413.

Turning to the merits, the district court concluded the SIF had interpreted the WACA too narrowly and, thus, wrongly concluded Pagán's death was not compensable under the Act. The court cited numerous Puerto Rico court decisions holding "that if an accident occurs on an employer's premises, the causal connection required to make the injury compensable is satisfied." Id. at 414 (collecting cases). Even assuming, contrary to the SIF's finding, that the shooting was intentional, the court reasoned that "where the intentional aggression is unexplained or without a known motive, the benefit of the doubt favors the worker, and it must be assumed that the aggression was 'work-related' and,

therefore, compensable." Id. at 415 (collecting cases). Because neither Fernández nor Sánchez alleged any motive behind Pagán's shooting or provided any explanation for it, the district court held (1) Pagán death was compensable under the WACA, and (2) Pfizer was entitled to the immunity provided by § 21. Accordingly, the court dismissed Fernández's wrongful death claim and Sánchez's wrongful death cross-claim against Pfizer.[1]

As part of its dismissal order, the court scheduled a show cause hearing to determine "whether cross-claimants [E.P.S. and R.P.S., through Sánchez] should remain in . . . [Fernández's] ERISA suit and, if so, whether they [we]re appropriately joined as co-defendants." Id. at 416. Sánchez filed a motion to reconsider the court's dismissal of her cross-claim.[2] Therein, Sánchez suggested for the first time that Adorno had a motive for shooting Pagán related to an "emotional relationship," and that discovery

---

[1] The district court declined to exercise supplemental jurisdiction over the wrongful death claims against Adorno given those claims were sufficiently separate from Fernández's ERISA claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Accordingly, the district court dismissed the wrongful death claims against Adorno without prejudice. See Fernández-Vargas, 394 F. Supp. 2d at 415-16.

[2] While the Federal Rules do not provide for a "motion to reconsider," a district court has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent. See Warren v. American Bankers Ins., 507 F.3d 1239, 1243 (10th Cir. 2007).

was necessary to establish such motive.

With Sánchez's motion to reconsider pending, Pfizer moved for summary judgment on Fernández's ERISA claims. Pfizer again asserted Fernández's failure to exhaust her administrative remedies. Fernández, whose counsel had been permitted to withdraw on July 6, never responded. Consequently, on August 22, Pfizer asked the court to deem its motion for summary judgment unopposed. Pfizer further moved to dismiss Fernández's case for failure to prosecute. See Fed. R. Civ. P. 41(b).

Oddly, the district court granted Sánchez an extension of time to respond to Pfizer's motion for summary judgment – a motion that by all appearances was directed solely at Fernández's ERISA claims. Sánchez filed a formal opposition to Pfizer's motion for summary judgment on August 29, 2005. Sánchez for the first time argued she had alleged, as part of her cross-claim, ERISA-based claims on behalf of E.P.S. and R.P.S. Sánchez urged the court to forego ruling on Pfizer's motion and allow discovery.

On August 30, the district court granted Pfizer's motion to dismiss Fernández's action for failure to prosecute. The next morning, the court held a show cause hearing on the lawsuit's continued viability in light of two outstanding matters: (1) Sánchez's motion to reconsider the court's

prior dismissal of her wrongful death cross-claim against Pfizer, and (2) Sánchez's opposition to Pfizer's motion for summary judgment on Fernández's ERISA claims. That afternoon, the court entered an order denying Sánchez's motion to reconsider without comment. The court then dismissed the case in its entirety and entered final judgment thereon:

> There being no pending ERISA cause of action pleaded by cross-claimants, the remaining portion of this case is **DISMISSED**. Any ERISA-type claims by the . . . [Sánchez] claimants are not properly before the court and are, if at all, premature. The dismissal as to any future ERISA claims by these claimants is **without prejudice**.

Fernández-Vargas v. Pfizer Pharm., Inc., Civ. No. 04-2236 (JAF), Order (D.P.R., Aug. 31, 2005).

Sanchez filed another motion to reconsider which, properly construed, constituted a motion to alter or amend the judgment. See Fed. R. Civ. P. 59(e). In her motion, Sánchez suggested, for the first time, that the district court's judgment was "null" because Fernández's son, C.J.P.F., (1) had an unspecified conflict of interest with his mother and (2) lacked legal representation at a crucial stage of the proceeding. Sánchez asserted the court's failure to appoint C.J.P.F. a guardian ad litem rendered its judgment void. Sánchez also argued that she had alleged a cause of action under ERISA, and summary judgment was

-12-

premature prior to discovery. With Sánchez's Rule 59(e) motion outstanding, Pfizer moved the court for injunctive relief pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283. Pfizer urged the court to enter a permanent injunction precluding Sánchez and her family from relitigating the issue of Pfizer's immunity from suit in commonwealth court.

In November 2006, the district court denied Sánchez's Rule 59(e) motion and enjoined her and her family from relitigating the immunity issue. See Fernández-Vargas v. Pfizer Pharm., Inc., Civ. No. 04-2236 (JAF), 2006 WL 3254463 (D.P.R., Nov. 8, 2006) (unpublished). The court again rejected Sánchez's argument that she had actually pled ERISA claims against Pfizer. The Court declined to address the need for a guardian ad litem to represent C.J.P.F., or for discovery. The court viewed these arguments as "premised on the [erroneous] supposition that they [Sánchez and her daughters] had an ERISA cross-claim against Pfizer in the first instance." Id. at *4.

Turning to Pfizer's motion for injunctive relief, the district court recognized that Sánchez's wrongful death cross-claim against Pfizer was identical to her wrongful death claim pending in commonwealth court. The court reasoned that because it had already conclusively determined

-13-

WACA § 21 rendered Pfizer immune from Sánchez's wrongful death cross-claim, permitting Sánchez to relitigate the immunity issue in commonwealth court would cause Pfizer irreparable harm. See id. at *8. Consequently, the court issued the injunction against Sánchez and her family. See 28 U.S.C. § 2283. Sánchez appealed. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## II.

On appeal Sánchez challenges the district court's judgment on four grounds. First, Sánchez argues Pfizer's removal of Fernández's complaint to federal court was improper and the court lacked subject matter jurisdiction over the action from the outset. Second, she claims the court improperly dismissed her cross-claim against Pfizer based on the erroneous view that WACA § 21 provided Pfizer immunity from suit. Third, she suggests the court's failure to appoint Fernández's son, C.J.P.F., a guardian ad litem renders its judgment a nullity. Finally, Sánchez asserts the court improperly enjoined her from pursuing her wrongful death claim against Pfizer in commonwealth court.

## A.

Sánchez's argument that the district court lacked subject matter jurisdiction presents a legal question we consider de novo. See United Seniors Ass'n, Inc. v. Philip

-14-

<u>Morris USA</u>, 500 F.3d 19, 23 (1st Cir. 2007) (reviewing de novo the district court's "implicit legal conclusion" that it had subject matter jurisdiction over the complaint). Our resolution of Sánchez's jurisdictional concern need not detain us long. Whether Pfizer's removal of Fernández's original commonwealth action to federal court was defective is immaterial. Fernández amended her complaint to plainly allege subject-matter jurisdiction in the context of her ERISA claims. Once Fernández did so, any initial jurisdictional defect in removal was cured. <u>See</u> <u>Brough</u> v. <u>United Steel Workers</u>, 437 F.2d 748, (1st Cir. 1971)

In <u>Brough</u>, we plainly held that a federal claim, raised for the first time in an amended complaint, cured any jurisdictional defects in an action otherwise improperly removed from state court. <u>Id.</u> at 750. When Fernández amended her complaint, the district court undoubtedly possessed original federal question jurisdiction over her ERISA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her wrongful death claim pursuant to 28 U.S.C. § 1367.

Sánchez's cross-claim against Pfizer acknowledged both the court's original and supplemental jurisdiction under §§ 1131 and 1367, respectively. Courts have long recognized that a party "cannot voluntarily invoke and then disavow

-15-

federal jurisdiction."  New Mexico v. General Elec. Co., 467

F.3d 1223, 1236 n.23 (10th Cir. 2006) (internal quotations

omitted); accord Bernstein v. Lind-Waldock & Co., 738 F.2d

179, 185-86 (7th Cir. 1984) (citing Brough).  Accordingly,

we reject Sánchez's challenge to the district court's

subject matter jurisdiction in this case.[3]

### B.

Next we consider Sánchez's argument that Pfizer is not

immune from suit under WACA § 21.  This issue arose within

the context of Pfizer's Rule 12(b)(6) motion to dismiss, and

we consider it de novo.  See Fitzgerald v. Barnstable School

Comm., 504 F.3d 165, 176 (1st Cir. 2007); see also Manager

of the State Ins. Fund v. Flores Hermanos Cement Prod., 7

---

[3]  Sánchez's argument that ERISA does not provide
Fernández a private right of action does not bear upon the
district court's subject matter jurisdiction, but only upon
the question of whether Fernández stated a cause of action
under ERISA.  In Verizon Maryland, Inc. v. Public Serv.
Comm'n, 535 U.S. 635 (2002), the Supreme Court rejected the
argument that a law's failure to provide a private right of
action bears upon the district court's jurisdiction to
entertain suit.  The Court explained that, unless the claim
is "wholly insubstantial or frivolous" or "made solely for
the purpose of obtaining jurisdiction," the "absence of a
valid (as opposed to arguable) cause of action does not
implicate subject-matter jurisdiction."  Id. at 642-43.
Section 1132(a)(1)(B) of ERISA plainly provides that a plan
"participant or beneficiary" may bring a "civil action" "to
recover benefits due him under the terms of the plan, to
enforce his rights under the terms of the plan, or to
clarify his rights to future benefits under the terms of the
plan."  29 U.S.C. § 1132(a)(1)(B).  Fernández's ERISA claims
were hardly "insubstantial or frivolous."

-16-

P.R. Offic. Trans. 860, 860-62 (P.R. 1978) (characterizing an employer's immunity under the WACA as an absolute "defense" based on the complete absence of a cause of action); 6 Arthur Larson & Lex K. Larson, Larson's Workers' Comp. Law § 100.01[2], at 100-3 (2007) (hereinafter Larson) (describing an employer's claim of immunity in the workers' compensation context as an affirmative defense).

At the outset, we, like the district court, recognize that because Pfizer was not a party to Fernández's action before the SIF, the SIF's decision that Pagán's death was not compensable under the WACA does not bind Pfizer. In Negrón v. C.I.T. Fin. Serv., 11 P.R. Offic. Trans. 828 (P.R. 1981), the SIF denied benefits to the beneficiaries of the decedent. The Industrial Commission upheld the SIF's decision and the beneficiaries took no further appeal. See 11 P.R. Laws § 11 (providing for appeals from SIF decisions to the Industrial Commission); see also id. § 8 (providing for appeals from Industrial Commission decisions to the "courts of justice"). Instead, they filed a wrongful death suit against the employer in Puerto Rico commonwealth court. In rejecting the SIF's decision, the Puerto Rico Supreme Court said this about the preclusive effect of that prior decision upon the employer:

> Although the Fund's ruling denying compensation
> rights is final and unappealable, because the

-17-

> Commission's upholding resolution was not appealed, the employer, petitioner herein, was not a party to that administrative proceeding. The Fund's ruling is res judicata between the Fund and the employee's beneficiaries, respondents herein. But that administrative ruling cannot represent a bar in the judicial ambit in order to determine its correctness to the effect of the exclusiveness [i.e., immunity] clause invoked by the petitioner. Since it was not a party to said action, the ruling is not res judicata as far as the petitioner is concerned.

Negron, 11 P.R. Offic. Trans. at 832-33. The court concluded that neither it, nor the employer, was bound "by an erred ruling of the Fund and the Commission." Id. at 834. Similarly, neither we, nor Pfizer, are bound by the SIF's decision that Pagán's death was not compensable.

As such, we assess Pfizer's entitlement to immunity under WACA § 21 anew. We conclude the SIF construed the WACA's scope of coverage too narrowly. López-Cotto v. Western Auto of Puerto Rico, Inc., No. CC-2006-248, slip op. (P.R., May 17, 2007) (Certified Translation MC-2007-380), best illustrates our conclusion. In that case, employees of defendant Western Auto locked López, a fellow employee, inside the men's restroom at the store. López apparently had notified management that a lock on the outside of the restroom door attracted practical jokesters. As part of their practical joke, López's coworkers emptied the contents of a fire extinguisher underneath the door. López suffered "permanent pulmonary damage and post-traumatic stress

-18-

disorder." Id. at 2.  López sought benefits from the SIF. The SIF labeled the incident a "work accident," and awarded López compensation.

Subsequently, López and his conjugal partner sued Western Auto for damages in commonwealth court.  The trial court refused to dismiss the complaint on the basis of employer immunity.  The Puerto Rico Court of Appeals reversed, holding Western Auto enjoyed immunity under WACA § 21.  López and his partner appealed to the Puerto Rico Supreme Court, where they unsuccessfully argued that the appellate court erred when it ruled on the employer's lack of intent "in the abstract," without allowing discovery or permitting an evidentiary hearing.  Id. at 7.  Importantly, the supreme court understood the question of WACA § 21 immunity to turn solely on whether Western Auto had "intentionally" caused López's injuries:

> An examination of the facts arising from the file of the case show that, at the most, the only thing that may be charged on the mentioned employer, regarding the incident occurred, is having been negligent by not having corrected the situation of the lock of the bathroom in spite of having been, allegedly, advised of it prior to the occurrence of the facts.  In this kind of situation, ordinarily, the worker does not have any cause of action whatsoever against the employer.  The argument of petitioners – to the effect that López Cotto was a victim of an intentional act of the employer – is totally unwarranted. . . . [T]he most that could be charged on Western Auto is that it was negligent.

> [I]n the complaint filed, the plaintiffs allege,

"in the alternative," that Western Auto is responsible for the intentional acts of López Cotto's coworkers. They are not right. . . . <u>[W]hen the person who intentionally injures the employee, is not the employer</u>, in its personal capacity or a person who is an "alter ego" of the employer or corporation . . . and whether it is a mere employee or supervisor, <u>a cause of action in damages against the employer for the acts committed by its employees is not proper</u>.

<u>Id.</u> at 11-12 (emphasis added).

In view of <u>López-Cotto</u>, we have little choice but to conclude that the gunman Adorno's mental state is only tangentially related to the question of whether Pagán's death was compensable under the WACA.[4] Certainly, Sánchez has not suggested that Adorno was the "alter ego" of Pfizer. Under <u>López-Cotto</u>'s rationale, Sánchez, to withstand Pfizer's § 21 immunity defense, must establish that Pfizer "intentionally" caused Pagán's death. See <u>id.</u> at 12.

Larson, a leading commentator on workers' compensation law, explains the usual meaning of "intentional" within the worker's compensation context. His view is undoubtedly

---

[4] In 1962, the Puerto Rico Legislature amended the WACA to extend the benefits of "such an important social legislation" to cases where a worker is intentionally and illegally assaulted by a coworker or other third party. <u>Ortiz-Perez</u> v. <u>State Ins. Fund</u>, No. CE-93-471, slip op. at 6 (P.R., Oct. 31, 1994) (Certified Translation MC-2007-229). Prior to that time, the WACA denied compensation benefits to any worker suffering injury or death due to a third person's criminal act. In amending the WACA, the legislature sought "to adapt the local law to the modern trends in the scope of work accident compensation that liberalized the restrictions as to what constitutes a work accident." <u>Id</u> at 5.

-20-

consistent with López-Cotto's view:

> [T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include the accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, . . . or other misconduct by the employer <u>short of a conscious and deliberate intent directed to the purpose of inflicting an injury</u>.

Larson, <u>supra</u> § 103.03, at 103-7 - 103-8 (emphasis added) (footnotes omitted). "Even if the alleged conduct . . . includes such elements as . . . wilfully failing to furnish a safe place to work . . . [or] failing to protect employees from crime, . . . the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character." <u>Id.</u> § 103.03, at 103-8 - 103-9 (footnotes omitted).

Sánchez argues, as López did in <u>López-Cotto</u>, that we should direct the district court to allow discovery on the intent issue. But Sánchez's cross-claim alleges only that "Pfizer acted with intentional, negligent and reckless disregard in <u>preventing, avoiding and/or detecting firearms within its premises</u> . . . [and] <u>failing to investigate and adequately supervise its workforce</u>." <u>Fernández-Vargas</u> v. <u>Pfizer Pharm., Inc.</u>, Civ. No. 04-2236 (JAF), Answer to Amended Complaint (D.P.R., April 25, 2005) (emphasis added). In other words, Sánchez alleges Pfizer failed to ensure a safe workplace for its employees, despite having a written

-21-

policy forbidding its employees from possessing firearms on the plant's premises. These allegations do not amount to a claim that Pfizer, <u>consciously and deliberately intended</u> to cause Pagán death. <u>See</u> Larson, <u>supra</u> § 103.03, at 103-8 - 103-9. Perhaps like Western Auto in <u>López-Cotto</u>, Pfizer was careless or indifferent to the need for a safe workplace. Such nonfeasance, however, falls far short under Puerto Rico law of the intent required to deprive Pfizer of the benefits of WACA immunity.

To be sure, a worker's assault upon a coworker may not be compensable if based on animosity or conflict arising out of a "purely private and personal" matter between the workers. <u>See</u> <u>Ortiz-Perez</u> v. <u>State Ins. Fund</u>, No. CE-93-471, slip op. at 7 (P.R., Oct. 31, 1994) (Certified Translation MC-2007-229). But Sánchez's cross-claim contains no allegation that some private and personal conflict between the two men motivated Adorno's action. The SIF found that Adorno was threatening Pagán "in a joking manner" when the gun went off. None of the allegations in Sánchez's cross-claim contradict the SIF's finding. Sánchez's cross-claim alleges only that Pfizer is responsible "for the negligent, careless and reckless acts caused by the employee [Adorno]." The cross-claim makes no reference to Adorno's motivation.

Adorno's motive for shooting Pagán, if he had one,

remains unapparent and unexplained. Given Puerto Rico courts' recognition of "the doctrine of neutral or unexplained assaults," which provides WACA coverage in cases where "an employee is injured as a consequence of an assault without an apparent and unexplainable motive," Pagán's death undoubtedly was compensable under the WACA. And the SIF erroneously held otherwise. Ortiz-Perez, slip. op. at 10-11. Consequently, the district court properly held that WACA § 21's employer immunity shielded Pfizer from Sánchez's wrongful death cross-claim.

### C.

Next, we address Sánchez's argument that the district court's failure to appoint C.J.P.F., Fernández's minor son, a guardian ad litem pursuant to Fed. R. Civ. P. 17(c) voids its judgment. Among other things, Rule 17(c) provides that where a minor is "not otherwise represented in an action," a federal court "shall appoint a guardian ad litem . . . or shall make such other order as it deems proper for the protection of the [minor]." The decision as to whether to appoint a special representative for a minor under Rule 17(c) rests within the district court's sound discretion. And we will not disturb that decision absent an abuse of discretion. See Developmental Disabilities Advocacy Ctr., Inc. v. Melton, 689 F.2d 281, 285 (1st Cir. 1982).

State law generally governs the capacity of one to sue as a representative of another. See id. Puerto Rico law grants parents a wide range of rights in the exercise of "patria potestas." These include the right to represent their minor children in civil litigation. See Ex Parte Torres-Ojeda, 18 P.R. Offic. Trans. 549, 556-57 (P.R. 1987). Absent some conflict of interest between a parent and child, or apparent wrongdoing on behalf of the parent, that right surely encompasses the right to decide whether to proceed with the prosecution of a civil lawsuit by weighing the attendant costs and benefits. Cf. P.R. R. Civ. Pro. 45.2 (prohibiting a default judgment against a minor unless such minor is represented "by the father, mother, . . . or other such representative who has appeared therein"); accord Fed. R. Civ. P. 55(b)(2) (same). After all, a parent is presumed to act in the best interest of her child. See Suboh v. District Attorney's Office, 298 F.3d 81, 92 (1st Cir. 2002).

Consistent with this view, we have interpreted Rule 17(c), specifically the language "not otherwise represented in an action," as "permitting appointment of a . . . guardian ad litem when it appears that the minor's general representative has interests which may conflict with those of the person he is supposed to represent." Melton, 689 F.2d at 285 (internal quotations omitted). Similarly, we

have interpreted the district court's authority to "make such orders as it deems proper for the protection of the [minor]" as encompassing situations "where it is clear" the interests of the parent and child conflict. Id. at 286.

The district court implicitly recognized Fernández's right to act as the representative of her minor son, C.J.P.F., from the outset of this action. We seriously doubt Sánchez, having no natural or other official relationship to C.J.P.F., has any standing under Rule 17(c) to challenge the nature of that representation. See id. at 285; see also Charles Alan Wright, Arthur K. Miller & Mary Kay Kane, Federal Practice and Procedure § 1570, at 503 (2d ed. 1990)(explaining that a court may properly refuse to appoint a guardian under Rule 17(c) where the appointment "is sought for ulterior reasons that have nothing to do with protecting the [minor]"). Notably, Sánchez never formally moved the court to appoint C.J.P.F. a new representative. Rather, Sánchez claimed in her Rule 59(e) motion that Fernández and C.J.P.F. had some unspecified conflict of interest requiring an appointment. Sánchez has provided us with only vague, unverified assertions, and we have no idea what that conflict might be.[5]

_____

[5] Rule 59(e) "does not allow a party to advance arguments that could and should have been presented to the
(continued...)

Our careful review of the documents Pfizer filed in support of its summary judgment motion on Fernández's ERISA claims indicate that Fernández, in all likelihood, failed to exhaust the administrative remedies contained in Pfizer's employee-benefit plan. See Madera v. Marsh USA, Inc., 426 F.3d 56, 61 (1st Cir. 2005) (construing ERISA to require exhaustion of administrative remedies). Absent evidence or a course of conduct suggesting otherwise, we presume Fernández saw nothing to be gained by continuing to expend resources on a case in which she and C.J.P.F. had little chance of prevailing. We see no conflict inherent in Fernández's decision not to respond to Pfizer's motion for summary judgment, and we presume she acted in C.J.P.F.'s best interests. See Suboh, 298 F.3d at 92. Thus, we reject Sánchez's challenge to the district court's judgment based

_____

5(...continued)
district court prior to judgment." DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001) (internal quotations and ellipses omitted). Sánchez recognizes as much by claiming, without citation to a single pertinent authority, that the district court's civil judgment is simply void based on its failure to appoint C.J.P.F. a guardian ad litem. Of course, a void judgment may be vulnerable to attack at any point. See Baella-Silva v. Hulsey, 454 F.3d 5, 9 (1st Cir. 2006) ("A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect.") (internal quotations and ellipses omitted). We view Sánchez's claim that the district court's judgment is void as nothing more than a forlorn attempt to forestall the entry of final judgment in this case.

upon its failure to appoint C.J.P.F. a guardian ad litem.

D.

Lastly, we review the district court's decision to enjoin Sánchez's commonwealth action under the Anti-Injunction Act for an abuse of discretion.  See Zurich American Ins. v. Superior Court, 326 F.3d 816, 824 (7th Cir. 2003).  Within this context, we evaluate the court's underlying factual findings for clear error and its legal interpretation of the Anti-Injunction Act de novo.  Id.  For our purposes, we are concerned only with the "relitigation exception" to the Act.  The Anti-Injunction Act prohibits a federal court from "grant[ing] an injunction to stay proceedings in State court except . . . where necessary . . . to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The words 'protect or effectuate' in § 2283 are generally viewed as incorporating the principles of res judicata and collateral estoppel, which come into play only when there is a final judgment or appealable order to be protected or effectuated."  See James v. Bellotti, 733 F.2d 989, 993-94 (1st Cir. 1984).

The relitigation exception provides that where a federal court has conclusively decided an issue, it may prevent the unsuccessful party from relitigating that same issue in state court.  Application of the exception (1) reinforces

the preclusive effect of federal court judgments, (2) ensures the finality of federal court decisions, and (3) prevents harassment through repetitive state court proceedings of those litigants prevailing in federal court. The relitigation exception applies where, because of preclusion principals, the state court should not hear a case but still may do so. See Erwin Chemerinsky, Federal Jurisdiction § 11.2, at 751-52 (5th ed. 2007).

Certainly, a federal court should not lightly undertake the task of deciding whether to enjoin state court proceedings. That injunctive relief may issue does not mean it must issue. See SMA Life Assurance Co. v. Sanchez-Pica, 960 F.2d 274, 276 (1st Cir. 1992). The court needs a "substantial justification" for issuing such injunction. Id. at 277. And the general prerequisites for injunctive relief must usually be met. See James, 733 F.2d at 993. Based on concerns of comity and federalism, a federal court must ask whether requiring the moving party to raise a preclusion defense in state court would be the wiser course. At the same time, the court must remain mindful that the state court's rejection of a preclusion defense effectively proscribes a federal court from issuing a subsequent injunction to effectuate its judgment. See Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 524 (1986)

(holding the relitigation exception was limited "to those situations in which the state court has not yet ruled on the merits of the res judicata issue").

With these precepts in mind, we decline to disturb the district court's injunction in this case because it is substantially justified.[6]  Puerto Rico's employer immunity defense "is of an absolute character which creates a legal immunity in favor of an insured employer against any other action: in other words there is no cause of action." Flores Hermanos Cement Prod. 7 P.R. Offic. Trans. at 861-62.  As a defense from suit rather than a defense from liability, the immunity provided by WACA is effectively lost if a case is allowed to proceed against the very employer it is designed to shield.  See Lowinger v. Broderick, 50 F.3d 61, 64 (1st Cir. 1995).  Allowing wrongful death proceedings against Pfizer to continue in Puerto Rico commonwealth court would wrongly require Pfizer to answer a claim that the law does not recognize.  As such, the district court did not abuse its discretion in concluding that such proceedings would

_____

[6] That the district court's injunction enjoined Sánchez and her family, rather than the commonwealth court, is immaterial.  An injunction issued against a party under the Anti-Injunction Act is the same as an injunction issued against a court.  See In re G.S.F. Corp., 938 F.2d 1467, 1478 n.9 (1st Cir. 1991), abrogated in part on other grounds, Connecticut Nat'l Bank v. Germain, 503 U.S. 249 (1992).

-29-

constitute irreparable harm to Pfizer.[7]  See <u>Metro-Goldwyn Mayer, Inc.</u> v. <u>007 Safety Prod., Inc.</u>, 183 F.3d 10, 15 n.2 (1st Cir. 1999) (listing the factors to be considered before issuing injunctive relief).  Moreover, the injunction does not harm the public interest, but rather serves "the public policy of the Commonwealth [of Puerto Rico] . . . favoring the unique liability enacted by the [WACA]."  <u>López-Cotto</u>, slip op. at 8.

For all the foregoing reasons, the judgment of the district court is affirmed.

---

[7] We are not unsympathetic to the loss E.P.S. and R.P.S. have suffered as a result of their father's death.  Sánchez, however, failed to fully protect her daughters' interests when she failed to pursue, to the fullest extent, available administrative remedies under the WACA.  While Sánchez never filed a claim with the SIF, the record reflects the SIF mailed notice to Sánchez at her last known address informing her and her daughters of the SIF's decision to deny compensation to Pagán's beneficiaries.  Recall that when Fernández filed her compensation claim she properly informed the SIF that both E.P.S. and R.P.S. were the dependent daughters of the decedent.  The notice of the SIF's decision mailed to Sánchez plainly explained her daughters' right to appeal the SIF's unfavorable decision.  Once the current litigation was underway, Sánchez, or perhaps more accurately her counsel, continued to exhibit the indifference which brings us to this point.  A belated answer to Fernández's complaint, a failure to timely file responses to Pfizer's motions, and a penchant for raising arguments for the first time in motions to reconsider emphasize this point.